Exhibit "2"

Senate Bill 1861

SRC-TJG, TJG C.S.S.B. 1861 78(R)BILL ANALYSIS

Senate Research CenterC.S.S.B. 1861
78R14669 JJT-FBy: Bivins
Finance
5/6/2003
Committee Report (Substituted)


DIGEST AND PURPOSE

Under statutory authority the comptroller of public accounts pays claims
for the State of Texas, except for those claims that are more than four
years old or that are more than $25,000 in amount.  These claims consist
of warrants voided by the statute of limitations, outstanding invoices to
private vendors, unpaid charges for Medicaid recipients, or court
judgments. C.S.S.B. 1861 directs payments, after approval, of certain
miscellaneous claims and judgments against the state out of certain funds
and makes certain appropriations.

RULEMAKING AUTHORITY

This bill does not expressly grant any additional rulemaking authority to
a state officer, institution, or agency.

SECTION BY SECTION ANALYSIS

SECTION 1.  Provides that certain sums of money are appropriated out of
the General Revenue Fund Account No. 0001 for payment of itemized claims
and judgments plus interest, if any, against the State of Texas to pay
certain entities and persons.

SECTION 2.  Provides that certain sums of money are appropriated out of
the State Highway Fund No. 0006 for payment of itemized claims and
judgments plus interest, if any, against the State of Texas to pay certain
entities.

SECTION 3.  Provides that certain sums of money are appropriated out of
the General Revenue Game, Fish, and Water Safety Fund Account No. 0009 for
payment of itemized claims and judgments plus interest, if any, against
the State of Texas to pay certain entities.

SECTION 4.  Provides that certain sums of money are appropriated out of
the General Revenue Vital Statistics Fund Account No. 0019 for payment of
itemized claims and judgments plus interest, if any, against the State of
Texas to pay certain entities.

SECTION 5.  Provides that certain sums of money are appropriated out of
the General Revenue Texas Department of Insurance Operating Fund No. 0036
for payment of itemized claims and judgments plus interest, if any,
against the State of Texas to pay a certain person.

SECTION 6.  Provides that certain sums of money are appropriated out of
the General Revenue State Parks Fund Account No. 0064 for payment of
itemized claims and judgments plus interest, if any, against the State of
Texas to pay certain entities.

SECTION 7. Provides that certain sums of money are appropriated out of the General Revenue Operators and Chauffeurs License Account No. 0099 for payment of itemized claims and judgments plus interest, if any, against the State of Texas to pay a certain individual.

SECTION 8. Provides that certain sums of money are appropriated out of the General Revenue Clean Air Fund Account No. 0151 for payment of itemized claims and judgments plus interest, if any, against the State of Texas to pay a certain individual.

SECTION 9. Provides that certain sums of money are appropriated out of the General Revenue Texas Southern University Current Fund Account No. 0247 for payment of itemized claims and judgments plus interest, if any, against the State of Texas to pay a certain individual.

SECTION 10. Provides that certain sums of money are appropriated out of the General Revenue - Compensation to Victims of Crime Fund Account No. 0469 for payment of itemized claims and judgments plus interest, if any, against the State of Texas to pay a certain individual.

SECTION 11. Provides that certain sums of money are appropriated out of the General Revenue - Petroleum Storage Tank Remediation Account No. 0655 for payment of itemized claims and judgments plus interest, if any, against the State of Texas to pay certain entities.

SECTION 12. Provides that certain sums of money are appropriated out of the Unemployment Compensation Clearance Fund Account No. 0936 for payment of itemized claims and judgments plus interest, if any, against the State of Texas to pay a certain estate.

SECTION 13. Provides that certain sums of money are appropriated out of the General Revenue - Asbestos Removal Licensure Fund Account No. 5017 for payment of itemized claims and judgments plus interest, if any, against the State of Texas to pay a certain entity.

SECTION 14. Provides that certain sums of money are appropriated out of the General Revenue - Workforce Commission Federal Fund Account No. 5026 for payment of itemized claims and judgments plus interest, if any, against the State of Texas to pay certain individuals and entities.

SECTION 15. (a) Provides that certain sums of money are appropriated to the Texas Department of Human Services, out of the funds as provided by Subsection (b) of this section, for payment of itemized claims and judgments plus interest, if any, against the State of Texas to pay certain entities.

(b) Requires the amounts appropriated by Subsection (a) of this section to be drawn from certain sources in certain amounts.

SECTION 16. (a) Requires the claim or judgment, before any claim or judgment may be paid from money appropriated by this Act, to be verified and substantiated by the administrator of the special fund or account against which the claim is to be charged and be approved by certain persons. Prohibits any claim or judgment itemized in this Act that has not been verified and substantiated by the administrator of the special fund or account and approved by certain persons by August 31, 2004, from

being paid from money appropriated by this Act.

(b) Requires each claim or judgment paid from money appropriated by this Act to contain such information as the comptroller of public accounts (comptroller) requires but to contain at a minimum the specific reason for the claim or judgment. Requires the claim, if the claim is for a void warrant, to include a specific identification of the goods, services, refund, or other item for which the warrant was originally issued. Requires the claim, in addition, to include a certification by the original payee or the original payee's successor, heirs, or assigns that the debt is still outstanding. Requires the claim, if the claim or judgment is for unpaid goods or services, to be accompanied by an invoice or other acceptable documentation of the unpaid account and any other information that may be required by the comptroller.

SECTION 17. Provides that subject to the conditions and restrictions in this Act and provisions stated in the judgments, the comptroller is authorized and directed to issue one or more warrants on the state treasury, as soon as possible following the effective date of this Act, in favor of each of the individuals, firms, or corporations named in Sections 1-14 of this Act, in an amount not to exceed the amount set opposite their respective names and shall mail or deliver to each of the individuals, firms, or corporations one or more warrants in payment of all claims included in this Act. Requires the comptroller to issue warrants to the Texas Department of Human Services for payment in favor of each of the individuals, firms, or corporations listed in Section 15 of this Act. Requires the comptroller to issue warrants to the Health and Human Services Commission for payment in favor of each of the individuals, firms, or corporations listed in Section 16 of this Act.

SECTION 18. Effective date: September 1, 2003.

# Exhibit "3"

# TSU's Board of Regent's By-laws



# SECTION 1

## Authority , Powers and Duties

**1.1 . Authority and Powers.**Under the provisions of Section 106. 01 et. seq. of the Texas Education Code, the State Legislature has given the Board of Regents of Texas Southern University the power and authority to govern the University. The Board is expressly directed by state law to enact bylaws, rules and regulations for the successful management and government of the institution. In addition to the express powers conferred by statute, the Board has implied or incidental power to do whatever is reasonably necessary to accomplish the purpose for which the University was established. Texas case law has held that Boards of Regents of Texas colleges and universities have wide discretion in exercising the power and authority granted by the legislature, including discretion in what action it takes directly and in what authority it delegates to other bodies within the University.

**1.2. Duties and Responsibilities.**Section 51.352 of the Texas Education Code provides as follows with regard to the duties and responsibilities of the Board of Regents:

(a) It is the policy of this state that the governing boards of institutions of higher education, being composed of lay members, shall exercise the traditional and time- honored role for such boards as their role has evolved in the United States and shall constitute the keystone of the governance structure. In this regard each governing board:

 (1) is expected to preserve institutional independence and to defend its right to manage its own affairs through its chosen administrators and employees;

 (2) shall enhance the public image of each institution under its governance;

 (3) shall interpret the community to the campus and interpret the campus to the community;

 (4) shall nurture each institution under its governance to the end that each Institution achieves its full potential within its role and mission; and

 (5) shall insist on clarity of focus and mission of each institution under its governance.

(b) The governing board of an institution of higher education shall provide the policy direction for each institution of higher education under its management and control.

(c) In making or confirming appointments to a governing board, the governor and senate shall ensure that the appointee has the background and experience suitable for performing the statutory responsibility of a member of the governing board.

(d) In addition to powers and duties specifically granted by this code or other law, each governing board shall:

(1) establish, for each institution under its control and management, goals consistent with the role and mission of institution;

(2) appoint the chancellor or other chief executive officer of the system, if the board governs a university system;

(3) appoint the president or other chief executive officer of each institution under the board's control and management and evaluate the chief executive officer of each component institution and assist the officer in the achievement of performance goals;

(4) set campus admission standards consistent with the role and mission of the institution and considering the admission standards of similar institutions nationwide having a similar role and mission, as determined by the coordinating board; and

(5) ensure that its formal position on matters of importance to the institutions under its governance is made clear to the coordinating board when such matters are under consideration by the coordinating board.

(e) Each member of a governing board has the legal responsibilities of a fiduciary in the management of funds under the control of institutions subject to the board's control and management.

(f) The governing board of each general academic teaching institution and each public junior college within a 100-mile radius of that institution shall adopt a policy to enhance the transfer of students based on the recommendations of the permanent advisory committee under Section 51.3521 of this code. Added by Acts 1987, 70th Leg, ch.823, & 1.09, eff. June 20, 1987. Amended by Acts 1991, 72 nd Leg, ch. 526, & 2, eff. September 1,1991. See also Section 55.174, 54.5221 and 54.5222 for Board Authority.

**1.3 Policies and Regulations.** The Board of Regents shall adopt policies, rules and regulations for the control and management of the University.

**1.4 Approval of Governing Documents.** The Board of Regents shall approve all constitutions, bylaws, rules, regulations and other governing documents (including proposed amendments) of all groups and organizations within the University operating under such documents. This authority may be delegated. Notwithstanding approval of such documents directly or through delegation, the Board of Regents retains the unilateral right to temporarily or permanently repeal, rescind, suspend or waive any or all of the provisions of any such documents, at its sole discretion, whenever it deems such action necessary or advisable in view of the particular circumstances at hand.

**1.5 Changes in State Law and Regulations.** These bylaws are governed by applicable Texas laws and regulations, some of which are cited as part of these bylaws. If and when the applicable Texas laws and regulations change, these bylaws will also be required to change to conform to the revised laws and regulations.

**SECTION 2**
**Membership of the Board**

**2.1 Membership of the Board.** Pursuant to the Education Code sections 106.11 and 106.12, the Board of Regents (hereafter sometimes referred to as "Board") is composed of nine (9) members appointed by the Governor of the State of Texas, with the advice and consent of the Texas Senate, for staggered terms of six (6) years each, the terms of three (3) members expiring on February 1 of odd numbered years.

**2.2 Non-voting Student Regent.** Pursuant to the Education Code section 51.356, there shall be a non-voting Student Regent, whose qualifications, appointment, authority, powers and duties shall be as set forth therein. The non-voting Student Regent, in compliance with section 51.356, shall not be a member of the Board of Regents, shall have no right to vote on any matter before the Board and shall not make or second any motion before the Board. However, the Student Regent shall have the right to attend and participate in all meetings of the Board of Regents and shall have the same right as any member of the Board to speak and provide input. The Student Regent

is not counted in determining whether a quorum exists for a Board meeting or in determining the outcome of any vote before the Board.

## SECTION 3
## Officers

**Officers.** In each odd numbered year, at its first regular meeting after September 1 of that year, the Board shall elect from its membership a Chair and a Vice Chair, a second Vice Chair, and a Secretary. The Board may also appoint one or more Assistant Secretaries as needed, who shall not be required to be Regents. Assistant Secretaries shall not sign or attest documents or instruments related to bonds or debt of the University. Each of these officers shall hold office for two (2) years or until his successor is duly elected. In case of death, resignation, or disqualification of an officer, the Board shall, as soon as practicable thereafter, elect or appoint a successor for the unexpired term.

## SECTION 4
## Duties of Officers

**4.1. Duties of the Chair.** The Chair shall:

(1) Preside over the meetings of the Board and shall have the right to vote on all matters and questions that come before the Board.

(2) Call special meetings of the Board, as herein provided.

(3) Call meetings of the Board, meeting as a Committee of the Whole, to consider any business that the Chair deems necessary or appropriate, as herein provided.

(4) Review and approve the agenda for all meetings of the Board.

(5) Appoint the members and Chairpersons of standing and ad hoc committees of the Board and subcommittees thereof, in consultation with, and subject to ratification by, the full Board.

(6) Serve as official spokesperson for the Board and represent the Board when it is not in session, unless the Board by vote has directed otherwise. The Chair may designate another Regent to serve as spokesperson on specific issues if the Chair deems it appropriate.

(7) Execute, with the Secretary or an Assistant Secretary attesting, any documents or instruments which the Board has authorized to be executed, except in cases where the Board has expressly delegated the signing and execution thereof to some other official of the University, provided however that Assistant Secretaries shall not sign or attest documents or instruments related to bonds or debt of the University.

**4.2. Duties of the Vice Chair.** The Vice Chair of the Board shall upon the death, absence, disability, resignation, removal or disqualification of the Chair perform the duties of the Chair until the Chair shall resume office or the Chair's successor shall have been elected as herein provided.

**4.3 Duties of the Second Vice Chair.** The Second Vice Chair of the Board shall upon the death, absence, resignation, disability, or disqualification of the Vice Chair, perform the duties of the Vice Chair until the Vice Chair shall resume office or the Vice Chair's successor shall have been elected as herein provided.

**4.4. Duties of the Secretary of the Board.** The Secretary of the Board shall keep or cause to be kept the minutes of the meetings of the Board, properly indexed, and shall certify the accuracy of the minutes. The Secretary shall also cause to be filed, indexed, and carefully preserved all papers and documents pertaining to the business and proceedings of the Board, and shall post, or cause to be posted, notices of all meetings of the Board and Board Committees in compliance

with Texas statutes and regulations. The Secretary (or an Assistant Secretary as authorized herein) shall attest all documents or instruments requiring such attestation.

**SECTION 5**

**Committees**

**5.1. Committees.** The Board shall have the following Standing Committees:

 (a) Executive Committee;

 (b) Administration and Finance Committee;

 (c) Academic Affairs, Research and Student Life Committee;

 (d) Development and Legislative Affairs Committee;

 (e) Personnel and Litigation Committee;

 (f) Physical Facilities Committee; and

 (g) Audit Committee.

The Board may also, at any time and from time to time, by resolution create ad hoc committees and subcommittees of the standing committees for any purpose the Board deems appropriate; and such subcommittees and ad hoc committees shall continue to function until discharged by the Board.

**5.2. Members of Committees.**

(a)Standing committees other than the Executive Committee shall consist of either three or four voting members appointed at the discretion of the Chair subject to the provisions of these bylaws. The Student Regent shall be a non-voting ex officio member of all Standing Committees except the Executive Committee. Standing committee members shall be appointed by the Chair promptly after her/his election, and shall remain as constituted after ratification (unless a vacancy is caused by death, resignation, disqualification, or inability to act) until reconstituted by the succeeding Chair.

(b) The Executive Committee shall consist of the Chair, the Vice Chair, the Second Vice Chair and the Secretary. The immediate past Board Chair, if still serving as a Regent, shall also be an ex officio non-voting member of the Executive Committee.

(c) Ad hoc committees shall consist of the number of members specified by the Board, or by the Chair if the Board does not specify a number. Ad hoc committees will normally include at least one Regent, and may also include non-Regents. Ad hoc committee members and Chairpersons shall be appointed by the Board Chair after consultation with, and subject to ratification by, the Board

(d) Subcommittees shall consist of the number of members specified by the Board, or by the Chair if the Board does not specify a number. The Chairperson and members of any subcommittee shall be appointed by the Board Chair after consultation with, and subject to ratification by, the Board. Non-Regents may be appointed to such subcommittees, but only Regents shall be voting members. The Student Regent shall be a non-voting ex officio member of all subcommittees.

**5.3 Vacancies.** In case a vacancy shall occur on any committee, subcommittee, or ad hoc committee, the Board Chair shall promptly appoint another member to serve, subject to ratification by the Board.

**5.4 Committee and Subcommittee Meetings.** Each Committee and Subcommittee shall meet at such times and places as the Chairperson shall designate, subject to compliance with applicable law and these bylaws. Whenever the Board Chair deems it necessary or appropriate to call a meeting of the Board, acting as a Committee of the Whole, the Board Chair shall be the Chair of the Committee of the Whole, and the Committee of the Whole shall meet at such times and

places as the Board Chair shall designate, subject to compliance with applicable law and these bylaws.

**5.5. Authority of Committees.** Standing Committees of the Board may act for the Board where specifically authorized to do so by prior Board resolution or by these bylaws. In all other cases, both Standing Committees and Ad Hoc Committees shall be authorized only to make recommendations to the Board. The Board meeting as a Committee of the Whole shall not take final action on any business under consideration, but shall instead make recommendations to be acted on at a later time by a Board meeting which has been convened in compliance with applicable law and these bylaws.

**5.6. Duties of the Executive Committee.**

(a)This Committee shall execute such orders, instructions and resolutions of the Board as shall be assigned to it at any meeting of the Board; and shall also have authority to act in place of the full Board when the Board Chair deems a Board meeting necessary, but the quorum requirements for a full Board meeting cannot be met. Also, in the event an emergency requiring immediate action arises during the time intervening between meetings of the Board, and a special meeting of the Board called pursuant to Article 6.2 is not practicable, the Executive Committee may immediately (subject to the requirements of applicable laws and regulations) take such action as the emergency shall, in the judgment of the Committee, require; provided, however, that the Board Chair shall make reasonable efforts to contact and consult with the President, General Counsel, and Executive Director for Board Relations before calling such an emergency meeting.

(b) At each meeting of the Board, the Executive Committee shall report in writing all actions taken by it and, in case any action was taken in response to an emergency, the Committee shall specify the nature of the emergency that created the necessity for immediate action. These reports shall be reflected in the minutes of the Board, and all actions taken by the Executive Committee shall be submitted for ratification to the full Board.

**5.7. Duties of the Administration and Finance Committee.** This committee shall review and make recommendations to the Board on matters relating to:

(a) Fiscal policies and procedures;

(b) Operating and capital budgets and capital financing plans;

(c) Legislative appropriations requests;

(d) Banking agreements, instruments and arrangements;

(e) Contracts, financial transactions and expenditures, except as specifically assigned to another committee;

(f) Accounting, bookkeeping, fiscal control and financial reporting systems of the University;

(g) Investment and reinvestment of any funds under the control of the University, including but not limited to financial aid, tuition and fees, ancillary revenues, and University Endowment funds;

(h) administrative policies, procedures, rules, regulations, operating instructions, manuals and other documents or instruments promulgated by the University administration or any organization subject to control or oversight by the University, except as specifically assigned to another committee; and any amendments or revisions of any of the above. This Committee shall also have authority to require, review and accept reports related to any of the above matters and to transmit such reports to the Board.

**5.8 Duties of the Academic Affairs, Research and Student Life Committee.** This Committee shall review and make recommendations to the Board on matters relating to:

(a) The role, mission, plans, policies and procedures for development and operation of the University and of each college and department within the University;

(b) Grant of degrees, diplomas and certificates;

(c) Faculty organization and faculty participation in University governance;

(d) Teaching load, class size, student-faculty ratios, instructional expenditures, research programs, grants and educational gifts;

(e) Curriculum and academic programs offered by the University;

(f) Admissions, tuition and fees, student aid, extracurricular activities (including but not limited to athletics) and student/faculty/community relations.

(g) All grants of tenure; and academic appointments at the level of Dean and above.

**5.9 Duties of the Development and Legislative Affairs Committee.**This committee shall review and make recommendations to the Board on matters relating to:

(a) Public Affairs, including but not limited to legislative and governmental communications and legislative relations and appropriations requests;

(b) Fund raising, including developmental gifts and grants and policies related to recognition of donors;

(c) Alumni and ex-student relations;

(d) Public relations, public information and media relations.

**5.10 Duties of the Personnel and Litigation Committee.**This committee shall review and make recommendations to the Board on matters relating to:

(a) Systems, policies, procedures and practices related to recruitment, hiring, employee relations, compensation and personnel.;

(b) Numbers and qualifications of necessary officers, faculty, professional and other employees of the University and their compensation and terms and conditions of employment;

(c) Appointment of non-Academic officers at the level of Vice President and above;

(d) Complaints against University officers or employees;

(e) Potential, threatened or actual litigation involving the University or any of its officers, faculty or other employees.

**5.11 Duties of the Physical Facilities Committee.**This committee shall review and make recommendations to the Board on matters relating to:

(a) Long range planning and master planning for buildings and other physical facilities of the University;

(b) Security of humans and physical facilities on property owned or controlled by the University;

(c) Appointment of architects and engineers to design and supervise construction of University buildings and physical facilities, including improvement of grounds and open space.

(d) Approval of construction, rehabilitation and repair contracts in excess of $100,000 related to University buildings and physical facilities, including grounds and open space, and including Change Orders for approved projects in any case where a Change Order increases the cost of the project in excess of $100,000 or extends the completion date of a project by more than 5 days.

(e) Approval of contractors under any program which would qualify contractors in advance for award of contracts without further competitive bidding, where the total aggregate amount awarded in any one year under multiple awards could be in excess of $100,000.

(f) Disposition or sale of any University property.

**5.12 Duties of the Audit Committee.**This committee shall, in consultation with the University's Internal Auditor, review and make recommendations to the Board on matters relating to:

(a) Policies and procedures for audits to be conducted by the University's Internal Auditor;

(b) Approval of an annual audit plan for audits by the University's Internal Auditor;
(c) Proposals for, or notices of, audits to be conducted by the State Auditor or other public or private audit organizations;
(d) Reports and results of audits conducted by any audit organization with regard to any aspect of the University or its activities or operations;
(e) Management's proposed responses to any audit report, recommendation, or conclusion.

**5.13 Staff Services for Board Committees.** The University President will designate a senior staff member as liaison for each Board Committee, subject to ratification of such designation by the Board. The designated liaison shall provide information, assistance and staff resources as requested by the Chairperson of the committee, to prepare the agenda and conduct the business of the committee.

**SECTION 6**
**Board of Regents Meetings**

**6.1. Regular Meetings.** Regular meetings of the Board shall be held at such times and places as the Board shall designate in compliance with state law.

**6.2. Special Meetings.** The Board Chair shall call a special meeting of the Board in compliance with state law: (1) upon receipt of a written request signed by at least four (4) members of the Board; or (2) upon the concurrence of the Chairman and one other member of the Board that there is a need for a special meeting. In addition, the Board Chair may call a special meeting of the Board or the Executive Committee at any time in an emergency, subject to the requirements of state law.

**6.3. Notice of Meetings.** The Chairman shall cause written notification of the date, time, and place of regular meetings of the Board to be sent to each Regent at least seven (7) days before the date of the meeting, together with a copy of the meeting agenda. In case the date of a regular meeting has been changed by the consensus of a majority of the Board, evidenced by email or faxed communications from the Regents consenting to the change, written notification of the new date, time and place for the meeting shall be sent not less than seventy-two (72) hours before the new time.

**6.4. Notice of Special Meetings.** Notice of any special meeting of the Board shall state the date, time, and place of such meeting and shall be sent to each Regent, together with a copy of the meeting agenda, not less than seventy-two (72) hours before the time of the meeting; provided, however, that in case of emergency such meeting may be held upon shorter notice whenever telephone concurrence is obtained from at least five (5) members of the Board.

**6.5. Public Notice Requirements**. Texas Southern University and the Board of Regents shall comply at all times with the requirements of the Open Meetings Act, Chapter 551 of the Government Code.

**6.6. Waiver of Notice.** Whenever notice is required to be given under these rules and regulations, a waiver thereof in writing signed by the persons entitled to said notice, whether before or after the time therein, shall be deemed equivalent thereto, provided that public notice was given in accordance with state law. Attendance at any meeting by a Regent shall be conclusively deemed a waiver of notice of that meeting by that Regent unless objection is made thereto at such meeting.

**6.7. Quorum.** A majority of the total authorized number of Regents shall be necessary and sufficient to constitute a quorum for the transaction of business at meetings of the Board. A majority of the total voting membership of any committee or subcommittee shall constitute a quorum for the transaction of business. The act of a majority of the voting members present and

voting at a duly called meeting of the Board or any committee shall be the act of the Board or that committee, except as may be provided otherwise by these bylaws.

**6.8. Agenda.**The agenda for each Board meeting is the responsibility of the Board Chair, who shall in consultation with the President cause to be prepared and distributed the agenda and the materials supporting each agenda item. At the request of any Regent more than ten (10) days prior to a regular Board meeting, the Chair shall add to the agenda any item or matter requested by that Regent.

**6.9.Open Transaction of Business.**The Board may transact official business only when in session and shall not be bound in any way by any statement or action on the part of any individual Board officer or other member except when such statement or action is pursuant to specific authorization by the Board.

**6.10. Official Business.**No business other than that placed on the agenda and noticed as required by State law shall be officially transacted at a meeting of the Board or any Board committee.

**6.11. Conflicts of Interests.**Regents of the University owe special duties of care and loyalty to the University and must avoid conflicts of interest in the conduct of University business. A Regent shall be considered to have a conflict of interest if such Regent has any existing or potential financial or other interest which impairs or might reasonably appear to impair such member's independent, unbiased judgment in the discharge of his responsibilities to the University, or such Regent is aware that a member of his family (which for the purposes of this paragraph shall be a spouse, parents, siblings, children, and any other relative if the latter resides in the same household as the Regent) or any organization which such Regent or member of his family is an officer, director, employee, member, partner, trustee or controlling stockholder has such existing or potential financial or other interests. All Regents shall disclose to the Board any possible conflicts of interest at the earliest practicable time. No Regent shall vote on any matter under consideration at a Board or committee meeting in which such Regent has a conflict of interest. The minutes of such meeting shall reflect that the Regent having a conflict of interest abstained from voting. Any Regent, who is uncertain whether he has a conflict of interest in any matter may request the board or committee to determine whether a conflict of interest exists, and the Board or committee shall resolve the question by majority vote.

**6.12. Rules of Order.**"Robert's Rules of Order", when not in conflict with these bylaws or applicable state law or regulations, shall govern the procedure at all Board and committee meetings.

**6.13. Fiscal Note Certification.**Except in case of bona fide emergency explicitly declared and described in the proposal, each action item proposed for adoption by the Board or any committee shall be accompanied by a fiscal note certified by the President and the chief financial officer of the University, setting forth the amount of positive or negative fiscal effect that the implementation of the proposal will have, and the detailed reasons for such effect, and no proposal may be adopted by the Board or any committee unless accompanied by such fiscal note.

**6.14 Legal Compliance Certification.**Except in case of bona fide emergency explicitly declared and described in the proposal, each action item proposed for adoption by the Board or any committee shall be accompanied by a certification from the President and the chief legal officer of the University, certifying that such proposal and its implementation will not be in violation of any applicable Federal, state, or local law or regulation, and no proposal may be adopted by the Board or any committee unless accompanied by such certification.

**6.15 Consent Docket.**The Board Chair may place any proposed action item which he deems to be routine and non-controversial on a consent docket for any regular meeting of the Board or any

Standing Committee. The consent docket shall list each item separately with enough detail to describe the substance of the item to the casual reader. Items on the consent docket will go directly to the Board (or committee, as applicable) for action without additional discussion or consideration, and will be included in an omnibus resolution approving all consent docket items together. If any Regent requests prior to approval that any item be removed from a consent docket, it shall be removed and considered separately at that meeting, and may be approved, rejected, or tabled and sent to the appropriate committee for further consideration.

**6.16. Executive Sessions.**All meetings of the Board and Board committees, regular and special, shall be open to the public except as provided by Texas Government Code Sections 55.071, 55.1072 and 551.074, pursuant to which the Board or Committee may go into closed session:

(a) To consult with the University's Attorney regarding pending or contemplated litigation, settlement offers, or matters that are confidential under the Texas Disciplinary Rules of Professional Conduct.

(b) To discuss matters related to the purchase or sale of Real Estate;

(c) To discuss matters related to employment and evaluation of personnel; or

(d) For other reasons permitted under applicable law.

**SECTION 7**

**Personnel Reporting Directly to the Board.**

**7.1. President.**

(a)The Board of Regents shall appoint by resolution in compliance with state law a President, who shall be the Chief Executive of the University, and who shall hold office for such term as the Board may decide.

(b) The role of the President of the University is one of creative leadership and, therefore, not to be described by a detailed list of specific duties. As Chief Executive Officer of the institution, the President is responsible to the Board of Regents for the functioning of the administration and for the management and control of the entire University, except where such authority and responsibility is withheld by the Board.

(c) All decisions and actions of the President must be in accordance with general policies approved by the Board of Regents and are subject to the right of the Board to intervene, provided, however, that the Board will rarely exercise this right for both philosophical and practical reasons.

(d) The President, on behalf of the Board of Regents, is expressly delegated the authority to sign any contracts that the Board has officially awarded by Board resolution.

**7.2 Internal Auditor.** The Board of Regents shall appoint by resolution in compliance with state law an Internal Auditor for the University, who shall serve in that position for such term of office as the Board may decide. The Internal Auditor shall report exclusively to the Board and shall submit all audit plans, programs, staffing, budgets and audit reports to the Board, through the Audit Committee, for review and, as necessary, for approval. The Internal Auditor shall prepare and submit with each action item that the Internal Auditor proposes for approval, a certified fiscal note and legal certification similar to those provided for in sections 6.13 and 6.14, and certifications by the President, the chief financial officer, and the chief legal officer shall not be required for proposals submitted by the Internal Auditor.

**7.3 Executive Director of Board Relations.** The Board of Regents shall appoint by resolution in compliance with state law an Executive Director of Board Relations who shall serve in that position for such term of office as the Board may decide. The Executive Director for Board Relations shall report directly to the Board and shall submit proposals for staffing, budget,

programs and projects to the Board, through the Board Chair, for approval, provided however that all such proposals shall be reviewed by the Chief Financial Officer and the Chief Legal Officer of the University for compliance with these bylaws. The Executive Director for Board Relations shall be responsible for all administrative and recordkeeping functions in support of the Board and in support of the Regents in the performance of their official duties for the University.

## SECTION 8
## Communications with the Board

**8.1 Board Members' Right to Information.** Board members have the right and duty to be fully informed on all matters that influence their obligations as Regents. They shall have the right to request and receive information regarding any aspect of the University and its operation.

**8.2 Open Presentation Time.** At the beginning of each regular Board meeting convened pursuant to section 6.1 of these bylaws, the Board shall provide "open presentation" time for public comment, subject to the following procedures.

(a) Any person may register in advance to speak during "open presentation" time. A registration sheet will be maintained in the office of the General Counsel of the University, and any person may register at that location during normal business hours. The registration sheet will be moved to the location for the Board meeting no later than 30 minutes before the scheduled time of such meeting, and will be available there for additional registrations throughout the Board meeting. However, only those who have registered prior to the time that the meeting is convened shall be permitted to speak at that meeting unless the Board Chair decides to relax this requirement.

(b) Each person registering to speak during "open presentation" time must provide her/his name and the topic on which she/he wishes to speak. The Board Chair will give priority to those who wish to speak on agenda items before the Board at that meeting, but in all other respects registrants shall be provided opportunity to speak on a "first to register" basis. If a registrant is called to speak and does not respond, the registration shall be carried forward until after the following speaker; if a registrant is then called a second time and does not respond that registration shall be deleted.

(c) Each person called to speak shall be limited to 3 minutes of presentation time, and "open presentation" time at each Board meeting shall be limited to a total of 30 minutes; provided, however, that the Board Chair shall have the discretion to extend both the individual and total limits as he/she deems appropriate. Those who have registered but are not called upon to speak at the first Board meeting after their registration shall have their registrations carried forward from meeting to meeting until such time as they are called.

**8.3 Proposals for Board Consideration.** All requests and proposals for Board consideration (other than requests from Regents) shall be submitted to the Office of the President in writing. The President or his designee shall maintain a schedule for submission of such requests and proposals, and shall communicate all timely requests and proposals to the Board Chair, who shall assign all such requests and proposals to the appropriate committees for consideration and disposition. In urgent circumstances the President and the Board Chair may decide to assign untimely requests or proposals for consideration.

**8.4 Disruption.** Disruption of any meeting of the Board of Regents or any committee or Subcommittee thereof, or any other meeting, procession or gathering sponsored by the University is prohibited. Disruption includes use of obscene language or defamatory statements as well as physical violence or interference with peaceful and

orderly conduct of the meeting; and includes any such language or behavior by those making presentations during "open presentation" time under section 8.2 of these Bylaws. The person chairing the meeting or another authorized university official or member of law enforcement should, to the extent practicable, clearly identify the disruptive language or behavior and request the person(s) responsible to desist. If that is not practicable, or if the person(s) responsible for the disruption do not desist after such a request, then the person chairing the meeting or another authorized university official may request law enforcement officers to remove the person(s) responsible for the disruption from the meeting." [*Adopted June 22, 2012*]

**SECTION 9**
**Amendments and Miscellaneous Provisions**
**9.1.Amendment .**The affirmative vote of six members of the board at a duly convened meeting shallbe required to amend, add to, repeal or revise these bylaws, provided however that any proposal to amend, add to, repeal or revise any portion of these bylaws must be filed with the Board Chair in writing and a copy thereof must be mailed to each member of the Board at least thirty (30) days in advance of the meeting at which such amendment, addition , repeal or revision is to be considered for approval .
**9.2. Gender and Number.**In these bylaws, reference to the masculine shall also include the feminine as appropriate to the circumstances, and vice versa. Reference to the singular shall also include the plural as appropriate to the circumstances, and vice versa.
*Adopted: April 24, 2009*

**AMENDMENTS**

SECTION 8 - Communications with the Board
8.4 Disruption............................................................................................ Adopted June 22, 2012



Exhibit "4"

Texas Education Code

Title 3, Subtitle A, Chapter 54,

Subchapter A, Section 54.004

EDUCATION CODE

TITLE 3. HIGHER EDUCATION

SUBTITLE A. HIGHER EDUCATION IN GENERAL

CHAPTER 54. TUITION AND FEES

SUBCHAPTER A. GENERAL PROVISIONS


Text of section effective on June 01, 2012


        Sec. 54.004.  RETENTION AND USE OF FUNDS.  All tuition,
local funds, and fees collected by an institution of higher
education shall be retained and expended by the institution and
accounted for annually as provided in the general appropriations
act.

Exhibit "5"

TSU's MAPP Policy 08.02.01:

Area:  Intellectual Property



**SECTION:** Legal                                              **Policy 08.02.01**
**AREA:** Intellectual Property

| SUBJECT: Intellectual Property Policy |
| --- |

## I.    PURPOSE AND SCOPE

Research at Texas Southern University often results in the invention of new scientific and technological developments, trade secrets and computer software, and the creation of new copyright material and patentable processes which may have commercial value. It is the policy of Texas Southern University to support research. While the production of commercially valuable intellectual property is not necessarily the primary mission of Texas Southern University, research or the duty of anyone engaged in research, the Board of Regents desires that both society and each school of discipline under the governance of the Board of Regents use all knowledge to the greatest benefit. Accordingly, when appropriate, Texas Southern University will protect all intellectual property rights in technology and copyright material and use diligent efforts to make productive use of such rights for the good of the public, the creator, and the University. When this result is achieved by the attraction of private risk capital, or by the transfer or licensing of rights in technology or copyrighted material, income may be realized which the Board of Regents will seek to distribute in a manner both fair to the creator and to the University. Financial return, however, always remains secondary and incidental to the public service aspect of developing and disseminating knowledge for public use. The Board of Regents hereby delegates management of intellectual property to the University. This policy shall be adhered to as outlined herewith.

## II.    PROPERTY RIGHTS

It is the policy of the University that any inventions, designs, improvements and discoveries made by an employee of the University during the term of his or her employment solely or jointly with others which are made with the University's equipment, supplies, facilities, trade secrets, or time, or the University's actual research or development, of which result from any work performed by an employee or faculty member of the University, shall be the exclusive property of the University. All employees and faculty members will promptly and fully inform and disclose to the University and the Standing Committee on Intellectual Property all such inventions, designs, improvements and discoveries, and all employees and faculty members agree to assign such inventions to the University.

The University shall have the right to keep inventions, such as trade secrets, if it so chooses. The employee or faculty member shall assist the University in obtaining patents in the United States

and in all foreign countries on all inventions, designs, improvements, and discoveries deemed patentable by the University and shall execute all documents and do all things necessary to obtain letters of patent to vest the University with full and extensive titles to the patents and to protect the patents against infringement by others. An invention is deemed to have been made during the period of the employee's employment if during such period, the invention was conceived or first actually reduced to practice and all employees and faculty members agree that any patent application filed by the employee shall be presumed to relate to an invention made during the employee's or faculty member's employment unless he or she produces evidence to the contrary.

III.    POLICY PROVISIONS

      A.  Texas Southern University is committed to scholarly activities that include education, research and other creative activities. In this regard, the University will promote the use of University inventions, discoveries and other works, while protecting the use of Intellectual Property Rights.

      B.  The Intellectual Property Policy shall apply to all persons employed by Texas Southern University, to anyone using University facilities under the supervision of the University personnel, to undergraduates, to candidates for masters and doctoral degrees, and to postdoctoral and predoctoral fellows. The Board of Regents may assert ownership in intellectual property of all types (including, but not limited to, any invention, discovery, trade secret, technology, scientific or technological development, and computer software) regardless of whether subject to protection under patent, trademark, copyright, or other laws. The Board of Regents shall have sole ownership of all intellectual property created by an employee who is hired specifically or required to produce it or commissioned by the University except as may be provided otherwise in a written agreement approved by the President. The University will provide review of the management services for patentable inventions, as well as other intellectual property either by its own staff, through a related foundation, or by other means. Intellectual property resulting from research supported by a grant or contract with the Federal Government, or an agency thereof, with a nonprofit or for profit nongovernmental entity, or by a private gift or grant to the University shall be subject to the ownership by the Board of Regents.

      C.  Administration approval of application request to, and acceptance of, grants or contracts with the federal government or any agency thereof, a nonprofit or for profit nongovernmental entity or a private donor that contain provisions that are inconsistent with this policy or other policies and guidelines adopted by the Board of Regents imply a decision that the value to the University of receiving the grant or performing the contract outweighs the impact of any nonconforming provisions of the grant or contract on the Intellectual Property Policy of the University.

      D.  The Intellectual Property policies and guidelines of the University are subject to, and thus amended and superseded by, the specific terms pertaining to intellectual property

rights included in federal grants and contracts, or grants and contracts with nonprofit and for profit nongovernmental entities or private donors, to the extent of any conflict. In instances where it is possible to negotiate University-wide intellectual property agreements with the federal agencies, nonprofit and for profit nongovernmental entities or private donors and thereby obtain more favorable treatment for the creator and the University, every effort will be made to do so with the cooperation and concurrence of the Office of General Counsel after consultation with the chair of the Standing Committee on Intellectual Property.

E. Employees of the University whose intellectual property creations result from a grant or contract with the federal government, or any agency thereof, with a nonprofit or for profit nongovernmental entity, or by private gift to the University shall make such assignment of such creations as is necessary in each case in order that the University may discharge its obligation, expressed or implied, under the particular agreement.

F. In the event that two or more persons are entitled to share royalty income and such persons cannot agree on an appropriate sharing arrangement as evidenced by a clear and unequivocal written agreement transmitted to the Standing Committee on Intellectual Property in the research disclosure form, that portion of the royalty income to which the creator is entitled under this Policy will be distributed to such person in such portions as the chair of the Standing Committee on Intellectual Property may deem appropriate under the circumstances and such decision shall be binding on the creator.

## IV. STANDING COMMITTEE ON INTELLECTUAL PROPERTY

A. Appointment. The President of the University shall appoint or specify the composition of a Standing Committee on Intellectual Property. The University General Counsel shall be a member of the Standing Committee on Intellectual Property. Members of the Standing Committee on Intellectual Property hold office for staggering terms of three years, with the terms of three (3) members expiring on June 1 of odd-numbered years.

B. Duties in general. In addition to the responsibilities described elsewhere in this policy, the Committee will advise and recommend to the President:
   1. Guidelines and procedures for implementing the Intellectual Property Policy;
   2. Proposed amendments to the Policy; and
   3. Such other matters as the President directs.

C. Procedures.
   1. Disclosure of Intellectual Property. Carefully planned methods of transferring Board of Regents-owned rights in intellectual property will best accomplish the objectives stated in this policy. Each school of discipline can accomplish those objectives only if inventors promptly disclose intellectual property. Any person who as a result of his or her teaching and/or research activities on

behalf of Texas Southern University creates intellectual property must submit a research agreement to the Standing Committee on Intellectual Property for determination of the University's interest. The research agreement requires disclosure and the inventor must prepare, sign, and date a disclosure in the form promulgated by the University. The inventor must also include drawings, sketches and other pertinent data to show the principle of the technology or intellectual property. Premature publication of information pertaining to discoveries and inventions, or delayed prosecution of patent protection, can damage seriously the ability to obtain patent protection. Therefore, if a person conceives or reduces to practice any technology, that person must disclose such technology to the University as soon as practicable after the date of first conception or discovery. Where delay would jeopardize obtaining the appropriate protection for the property, the creator may request the approval of the Chief Administrative Officer of the Standing Committee on Intellectual Property and the Office of General Counsel, to file appropriate paperwork/applications or take other steps to obtain available protection prior to the administrative review. If the request is granted, the creator may proceed with the filing of applications or other available protective measures pending the determination of the University's interest; provided that the creator is reimbursed for reasonable expenses in filing the application or taking other steps to obtain protection if the decision of the University is to assert and exploit its interest.

All faculty, staff, and students who believe that they have made a patentable invention or intellectual property shall report that belief in writing to the Standing Committee on Intellectual Property. The report should include a full description of the invention, intellectual property and any related matters. The Standing Committee on Intellectual Property shall decide how the matter will be categorized under the following guidelines:

a. Any invention or intellectual property made with only a nominal use of materials, supplies, facilities and services of Texas Southern University and with little use of the services of graduate or undergraduate students enrolled in the University shall belong to the inventor.

b. Any invention or intellectual property made with more than a nominal use of materials, supplies, facilities or services of Texas Southern University or with a substantial use of the services of graduate or undergraduate enrolled in the University shall belong to the University.

c. Notwithstanding a. and b. above, any invention or intellectual property made by Texas Southern University personnel with funds controlled by or derived from an extra-University contract or otherwise subject to such shall be subject to that contract's terms respecting patents. All such contracts must be submitted to the General Counsel for review and approval before a commitment is made.

2. Actions After Disclosure. The Standing Committee on Intellectual Property shall review the technology upon disclosure and shall recommend to the President that the University adopt one of the following actions:

   a. Institute action to acquire patent or other protection. The Committee shall recommend whether the University should pursue such action itself, refer the technology to a management agency, or license the technology as know-how and/or a trade secret, whether or not it obtains patent or other protection; or

   b. Transfer intellectual property rights in the technology to the research sponsor, if such transfer is required by the research agreement; or

   c. Waive ownership in the intellectual property rights in the technology in favor of the inventor and release the inventor from further responsibilities with respect to the technology that was disclosed, provided however that any further improvements or modifications are the property of the University and subject to this policy.

3. After reviewing the Committee's recommendation and such other technical consultation as is appropriate under the circumstances, the President shall determine the course of action concerning the technology.

4. The University will act in good faith and will attempt to evaluate all disclosures within a reasonable time. The Standing Committee on Intellectual Property evaluates each disclosure, if adequate, within 120 days from the first scheduled meeting after the disclosure is made. Within 120 days, the Committee shall transmit its recommendation to the President. The President has an additional 60 days to act on the Committee's recommendation. If either the Committee or the President fails to act, absent exceptional circumstances, on the invention within the relevant time period specified in the preceding two sentences, the inventor may request, and in response thereto the University shall grant, a waiver of its rights in favor of the inventor.

5. If, in the Committee's judgment, the inventor fails to provide any pertinent information, the evaluation of the disclosure will not be considered "adequate." In such circumstances, the Committee shall request the needed information from the inventor, and the calculation of the 120-and 60-day time periods specified in the foregoing subsection shall not begin until the requested information is received by the Committee.

6. If the Chief Administrative Officer of the Committee recommends that University not assert and exploit its interest, and that recommendation is approved by the President, the creator shall be notified within one hundred eighty (180) days from the date of submission that he or she is free to obtain and exploit a patent or other intellectual property protection in his or her own right and the University shall not have any further rights, obligations or duties with respect thereto except that, in some instances, the University may elect to

impose certain limitations or obligations or retain income rights, dependent upon the degree of the University's support involved in the creation of such property.

7.  If the Chair of the Committee recommends that the University assert and exploit its interest, and that recommendation is approved by the President, the Office of General Counsel, in consultation with the Chair, shall decide how, when, and where the intellectual property is to be protected. If the University decides to patent or seek other available protection for such intellectual property, it may proceed either through its own efforts or those of an appropriate private firm or attorney to obtain protection and manage the intellectual property. It shall be mandatory for all employees, academic and nonacademic, to assign the right to intellectual property and patents to the Board of Regents when such creations fall within Section C.1.b.

D.  Publication. Premature publication of information pertaining to technology could damage seriously the University's ability to obtain patent protection. Accordingly, neither an inventor nor the University may seek publication of any information pertaining to disclosed technology until the earlier of: (1) ninety (90) days after disclosure is made, or (2) such time as the University grants permission for such. The University will submit any prepublication materials to the inventor for review and comment at least sixty (60) days prior to planned submission for publication. The University shall have final authority to determine the scope and content of any publication during the 120 day review time frame.

E.  Duties of the Office of General Counsel (OGC). OGC has responsibility for all legal matters relating to intellectual property and will assist with respect to such matters. This office will secure protection for intellectual property when appropriate and will police infringements; maintain a central database and files for patent applications, patent and copyright licenses and agreements; coordinate other agreements, and; review and approve as to form all agreements relating to intellectual property.

## V. PATENTS

A.  General Policy. Texas Southern University is interested in the application of discovery, reason and knowledge to the solution of the problems of mankind. Therefore, to the extent that the results of this application are patentable, Texas Southern University has the responsibility of assuring that such patents are used and controlled in a manner that will provide maximum benefits to the public, the inventor and to the University. Texas Southern University is committed to assisting the faculty and staff in matters related to inventions and patents and to providing an environment that will encourage the development and disclosure of patentable inventions. The aim of this document is to provide a policy for the disclosure and publication of patentable findings. It will be the responsibility of all affected faculty and staff members to abide by University regulations as well as those agreements reached under contracts with

sponsoring federal agencies or other cooperating organizations. This policy applies to all members of the faculty, staff and student body of Texas Southern University. Intellectual property related to the individual's employment responsibility or resulting from the activities performed on the University's time, with support by state funds or through the use of University facilities, is subject to ownership by the Board of Regents. Intellectual property unrelated to the individual's employment responsibility that is developed on an individual's own time and without the University's support or use of the University's facilities is the exclusive property of the creator.

B.  Administration of Policy. Matters of policy relating to the operation of this patent policy shall be the responsibility of the Standing Committee on Intellectual Property. Administrative matters pertaining to the operation of this patent policy shall be the responsibility of the University General Counsel who will be a member of the Standing Committee on Intellectual Property.

## VI. COPYRIGHTS

Copyright ownership and the rights thereto are defined by federal law. The general policy of Texas Southern University relative to copyright ownership is that it shall reside with the creator of the work unless (1) the work was created as a result of funds directly allocated to the author by Texas Southern University for the specific project or otherwise subject to contractual or legal obligations, or (2) the work is a "work for hire" as that term is defined in Section XIII.

A copyright or a creative work developed without substantial contributions of funds, space, hardware or facilities of Texas Southern University shall reside with the creator. Copyright to materials developed with significant funds, facilities, space and equipment from Texas Southern University shall reside with Texas Southern University.

The terms of a sponsored research or other agreement may determine the ownership of a copyright material that a person creates in the course of or pursuant to such an agreement. If the agreement does not contain terms relating to the ownership of the copyright, whether by the author, the University, a third party, or a combination thereof, the other provisions of this section shall govern ownership of the copyright.

## VII. COMPUTER SOFTWARE AND FIRMWARE

A.  Ownership of software and firmware. Subject to relevant provisions of this policy, the Board of Regents owns any and all software and firmware that is conceived or developed by any person engaged in University research.

B.  Compliance with policy. Since the potential exists to protect software and firmware under copyright, patent, and trade secret laws, the creator must comply with the Board of Regents policies and regulations governing copyright and technology.

C. Inapplicability: employment to develop software and firmware. Sections below on "Reimbursement to University," "Creator's Residual Economic Interest," and "Time of Distributions " do not apply to revenue derived from the commercialization of the Board of Regents-owned software or firmware in any instance in which the creator of the software or firmware is employed by the University specifically for the purpose of creating the software or firmware. In all such instances the University owns the intellectual property rights in the software or firmware and retains all income there from.

VIII. LICENSE

Except for the rights, if any, of the Government of the United States, as set forth below, the Board of Regents represents and warrants its belief that (i) it is the owner of the entire right, title, and interest in and to Licensed Subject Matter, (ii) it has the sole right to grant licenses there under, and (iii) it has not knowingly granted licenses there under to any other entity that would restrict rights granted to Licensee except as stated herein.

Licensee understands that a Licensed Subject Matter may have been developed under a funding agreement with the Government of the United States of America and, if so, that the Government may have certain rights relative thereto. An Agreement may be explicitly made subject to the Government's rights under any agreement and any applicable law or regulation or an Agreement, the terms of the Government agreement, applicable law or regulation shall prevail.

Licensee understands and acknowledges that the Board of Regents makes no representation as to the operability or fitness for any use, safety, efficacy, ability to obtain regulatory approval, patentability, and/or breadth of Licensed Subject Matter. The Board of Regents also makes no representation as to whether there are any patents held, or which will be held, by others or by the Board of Regents in the Licensed Field, nor does the Board of Regents make any representation that the inventions contained in Patent Rights do not infringe any other patents now held or that will be held by others or by the Board of Regents.

IX. NET INCOME DISTRIBUTION

A. Reimbursements to University. The Board of Regents recognizes the healthy symbiotic relationship that, by this policy, it seeks to foster between itself and persons associated with the University. Of necessity, any gross revenue received as a result of commercializing any intellectual property rights developed or created at the University must first be applied to recovering the expenses listed in the definition of "net income" in section XIII. Thereafter, the creator or creators of the intellectual property have a residual economic interest, to be paid out according to the schedule in the following subsection.

B. Creator's Residual Economic Interest
1. The first $1,000 of income shall be paid to the creator(s) thereof in the proportions set forth on the disclosure form submitted to the Standing Committee

on Intellectual Property (in the case of patents and other technology) or on the title page of the copyrighted work.

2. Thereafter, unless the Standing Committee on Intellectual Property recommends and the President adopts, a different distribution, the net income derived from commercialization of the intellectual property rights shall be distributed as follows between the creator and the University:
   i. Of the first $100,000, 50% to the creator(s) and 50% to the University.
   ii. Of the second $100,000, 40% to the creator(s) and 60% to the University.
   iii. Of the third $100,000, 30% to the creator(s) and 70% to the University.
   iv. Of all other net income in excess of $300,000, 25% to the creator(s) and 75% to the University.

3. When there is more than one creator, the foregoing shares to the creator shall be distributed in the proportions set forth on the disclosure form submitted to the Standing Committee on Intellectual Property (in the case of patents or other technology) or on the title page of the copyrighted work.

C. Time of Distributions. The sums referenced in the foregoing schedule shall be distributed annually to the creator(s) or the University as soon as practicable after the close of the fiscal year during which the income was received.

## X. BUSINESS PARTICIPATION

Any Texas Southern University employee who conceives, creates, discovers, invents or develops intellectual property shall not serve as a member of the board of directors or other governing board or as an officer or an employee (other than as a consultant) of a business entity that has an agreement with Texas Southern University relating to the research, development, licensing, or exploitation of that intellectual property without prior review and approval by the President of Texas Southern University and the Board of Regents.

When requested and authorized by the Board of Regents, an employee may serve on behalf of the Board of Regents as a member of the board of directors or other governing board of a business entity that has an agreement with Texas Southern University relating to research, development, licensing or exploitation of intellectual property.

A. Business participation approved. The Board of Regents does not discourage persons subject to this policy from participating in the commercial development and/or exploitation of Board of Regents-owned intellectual property. Nonetheless, such participation must conform in all respects to this policy, including the section above concerning licenses and transfer, and to applicable state and federal laws.

B. Specific requirements. In particular, a person shall not engage in business participation if such participation would violate Texas Education Code, Section 51.912, or any other state or federal law or regulation that controls such participation.

## XI. EQUITY INTEREST.

In agreements with business entities relating to rights in intellectual property owned by the Board of Regents, the University may receive equity interests as partial or total compensation for the rights conveyed. In any such instance, the University may elect, at its option and with the concurrence of the President, to share an equity interest with the creator(s) in the same manner as residual economic interests are shared pursuant to Section IX.

Consistent with Section 51.912, Texas Education Code, and subject to review and approval by the President of the University, the appropriate Vice President and the Board of Regents, employees of the University who conceive, create, discover, invent, or develop intellectual property may hold an equity interest in a business entity that has an agreement with the University relating to the research, development, licensing or exploitation of that intellectual property.

The University may negotiate, but shall not be obligated to negotiate, an equity interest on behalf of any employee as a part of an agreement between the University and a business entity relating to intellectual property conceived, created, discovered, invented, or developed by the employee and owned by the Board of Regents.

Dividend income and income from the sale or disposition of equity interests held by the Board of Regents pursuant to agreements relating to intellectual property shall belong to the University and shall be distributed in accordance with the provisions of this policy.

Dividend income and income from the sale or disposition with equity interests held by a University employee pursuant to an agreement between the University and a business entity relating to rights in intellectual property conceived, created, discovered, invented or developed by such employee shall belong to the employee.

## XII. DISPUTE RESOLUTION

Any disputed issues related to intellectual property, or the interpretation of the Texas Southern University Intellectual Property Policy shall first be reviewed by the Provost, Vice-President for Academic Affairs and Research ("Provost"). Any disputed issues that cannot be resolved by the Provost shall be referred to Standing Committee on Intellectual Property for its recommendation as the Committee may deem appropriate under the circumstances and such decision shall be binding.

## XIII. USEFUL DEFINITIONS IN DISCUSSIONS OF INTELLECTUAL PROPERTY

**A. Author** means any person (as defined herein) who creates copyrighted material (also as defined herein).

**B. Business participation** means the participation of a person in any activity, the purpose of which is the commercial development or exploitation of intellectual property owned by the

University. Such participation includes, but is not limited to, an equity interest, a consulting relationship, service on a board of directors or similar body, a royalty interest, stock ownership, or any similar relationship.

**C. Copyrighted material or work of authorship** means original expression that is fixed in any tangible medium of expression and subject to copyright protecting under Title 17 of the United States Code as it now exists or as it may be amended. Examples include a book, article, or other literary work; dramatic work; pantomime or choreographer work; pictorial, graphic, and sculptured work; audiovisual work; or sound recording. Under federal law, copyright exists from the moment of the work's creation, although protection may be enhanced by registration with the United States Copyright Office.

**D. Creator** means an inventor or author (as defined herein).

**E. Firmware** means computer software, all or a portion of which has been more or less permanently burned or encoded on a read-only memory or device.

**F. Intellectual property rights** mean those rights of ownership recognized by in technology, copyrighted material, and computer software and firmware all as defined in this policy). Intellectual property rights include but are not to patents, copyrights, and rights to trade secrets and know-how.

**G. Inventor** means any person who discovers or invents technology.

**H. Licensed Subject Matter** means inventions and discoveries covered by patent rights of technology rights within licensed fields.

**I. Net income** means, with respect to Board of Regents-owned rights in any particular intellectual property, gross revenue received by the University as a result of the commercialization of such rights, less:

> **1.** Any taxes or other charges of any description paid by the University to governmental agencies in connection with the particular intellectual property, and
> **2.** All legal and other expenses paid by the University to affiliates or third parties in filing, prosecuting, maintaining, enforcing, defending, and commercializing such rights in the United States or foreign countries.

**J. Person** means any part-time or full-time faculty or staff member working at, or student attending, the University or other entity under the governance of the Board of Regents.

**K. President** means the president of the University under the governance of the Board of Regents, or any person the president designates to carry out the University's intellectual property policy.

**L. Software** means any program, language, or procedure for a computer system or portion thereof and any accompanying documentation. Software includes but is not limited to computer

programs, internal, subroutines, assemblers, generators, subroutine libraries, operating systems, and application programs.

**M. Technology** means discoveries, innovations, or inventions.

**N. University research** means all research activities, or work within or related to a person's expertise or general area of employment responsibility, or that has resulted from activities performed by the person on University time, with the support of University funds, or using University facilities, including work under a research agreement with an external sponsor and research conducted by anyone, whether or not a person as defined in this policy, who utilizes University resources.

**O. Work for Hire** means the participation of a person, faculty member, researcher, student, or employee who was hired specifically or required to produce or create specific intellectual property or create specific materials resulting in intellectual property.

XIV.   REVIEW AND RESPONSIBILITIES

      Responsible Party:     General Counsel

      Review:                Every three years, on or before October 1

XV.    APPROVAL

_____
General Counsel

_____
President

Effective Date: __7/21/10_____