Exhibit "6"

TSU's MAPP Policy 07.01.01:

Area:  Acceptance of Gifts and

Property Policy



**SECTION:** University Advancement          **Policy 07.01.01**
**AREA:** Development

| **SUBJECT: Acceptance of Gifts and Property Policy** |
| --- |

I.     PURPOSE AND SCOPE

The purpose of this policy and procedure is to establish and outline general guidelines for receiving gifts to the University. This policy revises the University Policy and Procedure on the Acceptance of Gifts approved October 2, 1987; the University Real Property Acquisition and Disposal Policy approved on August 6, 1993; and the University Policy on Gifts of Real Property approved February 14, 1997.

II.    POLICY STATEMENT

It is the policy of Texas Southern University ("University") to promote the University and the interests of those who support the University and its programs. The support of the University and its programs comes through charitable gifts such as gifts of cash, checks, credit cards, securities, real estate, art, rare books, paintings, antiques, matching gifts from corporations, memorial, and honorary gifts. Such gifts are an investment that help the University provide a quality education for its students.

While this policy is intended to encourage financial support for the University and the community it serves, the University desires to evaluate proposed gifts to determine whether the acceptance of said gifts benefits the University and its mission. Such gifts will be accepted if proceeds can be realized in a timely manner relative to the expenses and efforts required to hold, maintain, and manage the property until disposition or the existence of an effective direct use of the property. Gifts that support an approved program of the University shall be retained for the direct use of the program.

III.    DEFINITIONS – Types of Gifts
    A. *Annuity* – a contractual agreement to pay a fixed sum of money to an individual at regular intervals.

    B. *Beneficiary* – the recipient of a bequest from a will or a distribution from a trust.

    C. *Bequest* – a transfer of property to an individual/organization under a will.

    D. *Cash and Cash Equivalents* - U.S. Currency, checks, electronic fund transfers and credit card payments.

E.  *Charitable Lead Annuity Trusts* – trusts established by a donor to provide income to the University for a period of time after which the remainder is transferred back to the donor or another non-charity entity. Charitable Lead Annuity Trusts provide a fixed payment amount each distribution period to the benefactor.

F.  *Charitable Lead Unitrusts* – trusts which are similar to Charitable Lead Annuity Trusts except the distributions can vary (i.e., a percentage of the value of the trust assets).

G.  *Charitable Remainder Trust* – a trust that pays income to the beneficiary or other person and then passes its remainder to charity.

H.  *Closely-held Securities* – securities not traded among the public.

I.  *Endowment* - a grant of money providing for continuing scholarship, program or faculty support or maintenance to the University.

J.  *Executor* – the person named in a will to administer the estate and is also referred to as the Personal Representative.

K.  *Gift* – conveyances and testamentary transfers, as well as trust distributions to the University.

L.  *Gift-In-Kind* – non-cash donations, other than real or personal property of materials or long lived assets.

M.  *Insurance Policies* – a policy in which the University is both the irrevocable beneficiary and the owner of the policy.

N.  *Matching Gifts* – a program in which an employer will match the amount an employee gives.

O.  *Memorial Gifts* – a way to recognize a person's life and accomplishments.

P.  *Personal Property* – property other than real property, to include jewelry, collections, works of art, antiques, securities and items of tangible property.

Q.  *Publicly Traded Securities* - securities that are traded on an exchange or other publicly reported market.

R.  *Real Property* – individually and collectively refers to the surface and mineral estate. Includes land and generally those things affixed to the land, as well as those rights that issue out of the land (e.g., mineral rights, etc.)

S. *Remainder Trust* – the portion of the principal left after the income interest has been paid to the beneficiary or beneficiaries.

T. *Securities* - an instrument of investment in the form of a document, such as a stock certificate or bond.

U. *Trust* – a transfer of property to the care of a person or organization for the benefit of the grantor or others.

IV. PROCEDURES RELATED TO GIFTS OF REAL PROPERTY

A. All gifts and bequests of real property (surface and mineral estates) must be evaluated and inspected by an authorized representative of the Facilities & Construction Planning Division, Office of Development and the Office of General Counsel prior to acceptance.

B. A proposed gift of real property (surface and mineral estates) to Texas Southern University will be evaluated for its potential for immediate or future sale or retention. Such gift will be accepted if proceeds can be realized in a timely manner relative to the expenses and efforts required to hold, maintain and manage the property until disposition or determination of the existence of an effective direct use of the real property by the University.

C. The Facilities & Construction Planning Division should be contacted immediately upon identification of a potential gift of real property in order to determine if the property is acceptable. The Facilities & Construction Planning Division will obtain a title report, title policy or abstractor's certificate on each potential gift of real property to insure that there are no recorded liens or encumbrances on the proposed gift.

D. In an effort to prevent environmental risks, the University must screen potential donations of real property to ensure that there is not hazardous waste or contamination, hazardous materials on or in the property or structures contained therein. Testing for hazardous substance shall be performed in accordance with University Policy.

E. An evaluation of the return expected from a gift of real property shall include but not be limited to such factors as income potential, development characteristics, type of property interest, holding costs, management requirements, holding period and location. Other limitations are outlined as follows:

> *Gifts of surface interests, mineral interests (other than working interests) or a combination thereof will be accepted if there is a clear benefit to the University and there are no undue restrictions on the University's ability to own, manage or dispose of the property.*

F. Gifts of real property will be accepted if adequate provisions are made by the donor for any expense of management until disposition. Whenever possible, the donor should be encouraged to contribute funds for the management of the property until disposition occurs. Any reimbursed costs of management or sale of property including disposal will be charged either against income earned by the property or proceeds from the sale of the property as appropriate.

G. Gifts of real property may be considered for retention as investments when either:
   1. the return exceeds that which can be expected when the net sale proceeds are invested in the Texas Southern University Endowment Fund; or
   2. there is a prospect for direct use by an approved program of the University.

H. The authority to accept gifts and bequests of real property is vested in the Board of Regents for the benefit of the University, unless specifically delegated to a University official by the Board of Regents. Therefore, title to each property shall be held in the name of the Board of Regents, not in the name of any Texas Southern University department or individual within Texas Southern University.

I. It shall be the policy of the Board to accept interests in real property if such ownership will result in one hundred percent (100%) interest in the real property and there are no undue limitations on the University's ability to own, manage or dispose of the property. Lesser interests in real property will be accepted when a clear benefit to the University can be demonstrated. Minority interests in minerals, other than working interests, will be accepted if the gift or bequest meets the requirements outlined in E above.

J. All real property gifts to the University must be accepted by the Board of Regents, but acceptance is made contingent upon the following:
   1. A Title Report with respect to such property shall be received prior to acceptance; and
   If property is not adjacent to the University, sufficient revenue must be generated from it to provide for its upkeep.

K. Prior to acceptance of a proposed gift of real property the following should be provided by the donor:

   1. Map showing the location of the property

   2. A legal description of the property

   3. Proof of ownership (deed)

   4. A survey of the subject property

   5. A list of improvements

6. Copies of current leases (if any)

7. Copies of current oil and gas leases (if any)

8. Copies of reserve studies (if any)

9. Copies of division orders, if any

10. Geological or geophysical records

11. Lease ratification and lease assignments

12. Certification from the donor that the property is free of hazardous material(s) or contaminants. The certification must be prepared by a company licensed, registered or otherwise qualified. (If the donor is unable to provide such certification, the University will contract for the service to be provided. Donor must reimburse the University for the cost of the service.)

13. Verification that there is no indebtedness or lien(s) on the property

14. A current appraisal of the property in accordance with applicable IRS and/or state/county guidelines or a reserve study

15. Copies of insurance coverage carried by the well operator relative to environmental damage

16. Current title commitment and copies of all title exceptions, including deed restrictions or covenants and liens

17. Copy of the donor's title policy (if any)

18. Abstracts of title or title opinions

19. List of current expenses required to maintain/operate the property

20. Proof of payment of taxes and association fees (if any)

21. Copies of documents relating to past or current litigation directly affecting the real estate or mineral gift or bequest

22. Copies of other relevant documents, such as unit agreements and operating agreements

    23. A written statement from the donor identifying the purpose of the gift of real estate

    24. A written statement from the donor allowing University officials access to the property to conduct on-site inspections

    25. Other information as may be requested by the University's Office of General Counsel, Office of Development, Office of Health and Safety, and/or Facilities & Construction Planning Department, in order for the University to evaluate the proposed gift

  L. The University encourages the Facilities & Construction Planning Division to obtain a title policy at the time the property is acquired whether the policy premium is paid with funds provided by the donor or the University.

V.    PROCEDURES RELATING TO GIFTS OF PERSONAL PROPERTY AND CASH/CASH EQUIVALENT

  A. Gifts of outdoor works of art must be approved by the Board of Regents prior to the acceptance of a gift. Considerations will include appropriateness with regard to the University's campus architectural plan, as well as any expense related to installation and/or continuing maintenance.

  B. Art depicting a person, whether living or deceased, shall be approved by the Board prior to acceptance.

  C. Personal property such as art, collections, jewelry, etc. shall be accepted upon receipt of adequate information or documentation from a certified appraiser that such property has value that is of a benefit to the University.

  D. Personal property shall be accepted by the University if, after review by the appropriate offices as outlined in Section VI., there is reason to believe that the property may be readily sold or supports an approved program of the University.

  E. Gifts of personal property that require special facilities or security to properly safeguard it may be accepted after making arrangements for that protection.

  F. Gifts of insurance policies in which the University is named as a primary, secondary or last beneficiary, are acceptable under situations where the donor has previously purchased a life insurance policy during his/her life.

  G. The University should automatically accept unrestricted cash or cash equivalent gifts, except as provided herein. Checks for unrestricted or restricted cash gifts should be made payable to Texas Southern University or Texas Southern University Foundation, and not to an employee, agent or volunteer of the University. Gifts of

cash equivalents in excess of One Hundred Thousand ($100,000.00) shall be reviewed by the President prior to acceptance.

H. Gifts of cash or cash equivalents will be forwarded within one day of receipt to the Office of Development in the Division of Advancement, along with the Texas Southern University Gift Form.

I. Gifts of publicly traded securities will generally be sold immediately upon receipt by the University.

J. Prior to acceptance of a proposed gift of personal property, the following should normally be provided by the donor:

  1. A description of the property

  2. Proof of ownership (deed)

  3. Verification that there is no indebtedness or lien(s) on the property

  4. A current appraisal of the property in accordance with applicable IRS and/or state/county guidelines or a reserve study

  5. List of current expenses required to maintain/operate the property

  6. Copies of documents relating to past or current litigation directly affecting the gift

  7. Copies of other relevant documents related to the gift, if any

  8. A written statement from the donor identifying the purpose of the gift of personal property

  9. A written statement from the donor allowing University officials access to inspection of the property, as necessary

  10. Other information as may be requested by the University's Office of General Counsel, Office of Development, Campus Services Operations, Environmental Health and Safety, and/or Facilities & Construction Planning Department, in order for the University to evaluate the proposed gift.

VI. MISCELLANEOUS PROVISIONS APPLICABLE TO GIFTS OF REAL AND PERSONAL PROPERTY

  A. The authority for the University to accept gifts of real and personal property is vested in the Board of Regents. Therefore, no member of the staff or faculty of the

University has the authority to accept gifts of real and personal property, unless expressly provided by the Board of Regents.

B.  All gifts of real or personal property, including pledges having a value of more than One Million Dollars ($1,000,000.00), in cash or in-kind, must be submitted to the Board of Regents for approval. Acquisitions involving real property must be in compliance with State law.

C.  The Board of Regents may delegate authority to the President of the University to accept gifts of personal property with a value of less than One Million Dollars ($1,000,000.00), in cash or in-kind.

D.  The Board of Regents must approve all gifts of securities and gifts from foreign sources. Before any securities not traded on a public market are accepted by the University, the Board shall be satisfied as to the title to all substantial assets held by the corporation whose securities are being tendered.

E.  Except for real property, all gifts in-kind to the University may be accepted by a Designated Official, as determined by the Board of Regents. Gifts in-kind will be distributed in conjunction with the wishes of the donor.

F.  The person(s) wishing to donate gifts to the University must fill out a standard Gift Form. The Gift Form will then be forwarded to the Director of Development to be formally recorded.

G.  A copy of all Gift Forms will be maintained by the Office of Development.

H.  The responsibility for recording all gifts received and sending a letter of acceptance to the respective donor(s) lies with the Director of Development. Copies of all letters and documentation related to endowments will be sent to the Chief Financial Officer.

I.  The Office of Development shall send an acknowledgement letter to each donor and is responsible for preparing/distributing original gift receipts to donors within 72 hours of receipt of all appropriate gift documentation.

J.  Following review of the information provided by the donor, the Office of Development in the Division of University Advancement, the Facilities & Construction Planning Division (for gifts of real property only) and the Office of General Counsel shall review all gifts processed or administered by the Office of Development. Gifts requiring review include, but are not limited to, securities, stock of closely-held corporations, stock of S-corporations, stock options, interests in limited partnerships, bequests, interests in trusts, gifts and other funds to establish endowments, and other planned gifts. A decision will be made to accept or reject the proposed gift based on the written recommendation of the Facilities & Construction

Planning Division (for gifts of real property only), the Office of Development and the Office of General Counsel in light of the following:

1. The potential of the property to produce an acceptable return or to contribute directly to approved programs of the University

2. Holding cost of every type

3. Holding period

4. Donor restrictions

5. Property valuation

6. Management requirements

7. Type of property interests

8. Ability to meet the requirements as set forth in current and future Texas Southern University policies for acquisitions of real property.

K. The Board of Regents delegates to the President, the Chief Financial Officer, and the Vice President of University Advancement, the authority to execute all necessary Internal Revenue Service forms, including without limitation, IRS Forms 8283 and 8282, that relate to gifts.

L. Recommendations regarding the acceptance of gifts which do not conform to all relevant laws and University policies shall be submitted by the President to the Board via the agenda after review by the Office of University Advancement, the Facilities & Construction Planning Division (for gifts of real property only) and the Office of General Counsel as to the terms of the gifts, the nature of the donated assets and/or the requested action.

M. The University will not administer a gift for the benefit of any designated individual unless the donor is exempt from federal income taxes as defined by the Commissioner of Internal Revenue.

N. The Board of Regents will not serve as executor or administrator of an estate because of the potential for conflicts of interest and the scope of the required duties.

O. No employee of the University should knowingly act as witnesses to wills in which the University is named as a beneficiary so as not to jeopardize the receipt of the bequest.

P. Employees of the University who agree to serve as trustees of a trust, executors or administrators of an estate benefiting the University are to immediately notify the Office of Development of their appointment. Upon notification, the employee will be furnished with a statement advising of the potential for conflicts of interest and directing that all communications pertaining to the trust or estate between the employee and any office of the University shall be in writing.

Q. Gifts of real or personal property will not be accepted if donor or other restrictions place undue limitations or an undue hardship on the University's ability to own, manage, and dispose of the property. The University reserves the right not to accept such gifts. Any gifts which place an undue limitation or hardship on the University's ability to own, manage and otherwise dispose of the property, shall by reviewed by the Vice President of University Advancement and other appropriate University officials, as appropriate.

R. Gifts that purport to obligate the University to perpetual ownership shall not be accepted.

S. Gifts of mortgaged or encumbered property will not be accepted.

T. The Board will not subordinate its fee simple interest in any holding of real property absent extraordinary circumstances.

U. Gifts from foreign sources are subject to disclosure requirements in accordance with federal and state laws (see Section 1011f of Title 20 United States Code and Section 51.572 of the Texas Education Code). The Vice President for Finance or the Office of General Counsel shall be responsible for facilitating disclosure of gifts and contracts from foreign sources and will submit required reports to the Board of Regents.

V. University staff shall not become involved in furnishing donor names to other persons for the purpose of marketing life insurance to those donors, subject to applicable laws. Any external request for donor information shall be handled by the Office of General Counsel in accordance with provisions of the Public Information Act.

W. The University will pay no fee to any person as consideration for directing a gift by a donor to the University.

X. No insurance products or insurance companies are endorsed by the University for use in funding gifts to the University.

Y. A report will be made by the Office of Development in the Division of University Advancement, in conjunction with the Office of the President, on the value and kind of gifts that have been accepted. Such reports will be provided for review at Board of Regents meetings.

Z. The Office of Development in the Division of University Advancement will be responsible for maintaining records regarding any known gifts that will accrue to the University at some time in the future.

AA. All documentation regarding future gifts should be recorded. The Office of Development shall maintain copies of all documents related to potential future gifts to the University.

BB. No gift of less than Ten Thousand Dollars ($10,000) will be accepted as a separate permanent endowment. Should the Board determine at any time that a fund is not of sufficient size, and has no foreseeable prospects of growing to a sufficient size to justify the continuing costs of maintenance of such fund as a separate fund, then the Board at its discretion and with notification to the donor may authorize the expenditure of the principle for the purposes for which the fund was established.

CC. Memorial and honorary gifts are gifts in memory or honor of a person. Such gifts are a way to recognize a person's life and achievements. Memorial and honorary gifts may be made and are administered as the donor specifies, to the extent that such gifts do not place restrictions, undue limitations or an undue hardship on the University's ability to own, manage, and dispose of the property. When making memorial or honorary gifts, the donor should provide the honoree's name and the address and phone number of the honoree or next of kin.

VII. MANAGEMENT OF PROPERTY

A. All deeds for real property owned by the Board shall be filed in the county where the property is located with the original retained in the permanent records of the Board.

B. It shall be the policy of the Board to retain direct control of all interests in property owned by Texas Southern University.

C. Subject to the Regents' Rules and Regulation, responsibility for the management, leasing and sale of all property which is covered by this policy is delegated to the President, who shall manage all real estate.

D. The President may delegate responsibility for the management of property and assets to individuals within the Facilities & Construction Planning Division or its equivalent office and may employ such additional persons as he or she deems appropriate within the authority granted by the Board.

E. The President or his/her designated representative is authorized and empowered on behalf of the Board to take all actions necessary and to execute all documents required to sell, lease or otherwise convey interests in property that are received by gift or bequest and that comply with these guidelines.

      1. Approval as to legal form and documentation by the Office of General Counsel shall be required for each transaction.

      2. Any transaction accomplished under this section shall be reported to the Board as prescribed.

F. The preferred method of valuation for the purpose of determining sale price or lease rates for real property interests or other personal property shall be the use of an independent State certified or other licensed appraiser. The value of transactions involving real or personal property of a nominal value may be determined by use of available resources. An appraisal shall not be required when real or personal property is sold at public auction or by use of sealed bids.

G. The preferred methods of valuations for purpose of determining sale price for mineral assets shall be by determination of petroleum or other geological engineer, by offer solicitation, or by any other generally accepted industry standard.

## VIII. EMPLOYEE GIFTS

In accordance with Section 51.947 of the Texas Education Code, employees may authorize a deduction from the employee's salary or wages each pay period for a contribution to an institution of higher education. This policy does not include contributions and deductions for the State Employee Charitable Campaign (SECC).

A. Payroll Deduction Enrollment

      1. The Office of Development in the Division of University Advancement is responsible for providing marketing and gift allocation guidelines for employee gifts. University employees may sign up to participate in payroll deduction once a year during a formal enrollment period. New employees who start work after the formal enrollment period must wait until the following year to participate in payroll deduction for gifts to the University.

      2. The Office of Development in the Division of University Advancement is responsible for prescribing a form to be utilized by employees to begin and/or discontinue payroll deduction.

      3. Employees may discontinue payroll deduction at any time by giving written notice to the payroll department of the University with a copy to the Office of Development.

      4. The Director of Development shall prepare a report of all enrollment information to be presented to the Vice President of University Advancement and Chief Financial Officer.

B. Gift Levels and Designations

1. The minimum contribution amount through the payroll deduction program is $2.00 per month ($24.00 annually) per designation.

2. Employees may designate all or a portion of their gift to TSU or a TSU support organization so long as the support organization is in full compliance with the rules adopted by the University under Section 2255.001 of the Texas Government Code.

C. Payroll Deduction Process
   1. Deductions are made on an after-tax basis.
   2. Deductions will take place each month. Deductions for biweekly employees will take place only once a month, during the first cycle of each month.
   3. General Ledger accounts will be established at the University into which deductions will be deposited per donor designation.
   4. The Office of Human Resources will approve all payroll deduction and the Office of Development will record and acknowledge all gifts.

IX.    CONFLICTS OF INTEREST

Members of the Board are often persons of wide-ranging business interests. Therefore, a prudent, independent decision process may result in real property transactions with or involving firms or organizations with whom a member of the Board is affiliated. Affiliation shall be interpreted within this section to mean an employee, officer, director, or owner of five percent (5%) or more of the voting stock of a firm or organization. Unless the Board specifically finds that the transaction is in the best interest of Texas Southern University no member of the Board or employee of Texas Southern University may participate in any transaction with Texas Southern University involving interests in real property with which such Board member or employee is affiliated other than to convey a gift or bequest to Texas Southern University.

X.     REVIEW AND RESPONSIBILITIES

Responsible Party:      Vice President of University Advancement

Review:                 Every two years, on or before September 1

XI.    APPROVAL

_____
Vice President of University Advancement

_____
President

Effective Date: ___7/21/19_____

Exhibit "7"

Attorney General of Texas Opinion

No. GA-0894



December 8, 2011

Mr. Andrew C. Hughey
General Counsel
Texas Southern University
3100 Cleburne Avenue
Houston, Texas 77004

Opinion No. GA-0894

Re: Whether Texas Southern University may exchange or grant outright a portion of its real property that contains or is adjacent to a historical cemetery (RQ-0975-GA)

Dear Mr. Hughey:

On behalf of Mr. Glenn Lewis, Chair of the Board of Regents of Texas Southern University ("TSU" or the "University"), you ask whether TSU may convey real property associated with a historic cemetery by exchange or gift. [1] Request Letter at 1. You provide us with the following background information. TSU owns three parcels of land associated with the Olivewood Cemetery in Houston. *Id.* at 1-2. The Descendents of Olivewood, a Texas nonprofit corporation (the"Corporation), has been authorized by court order to restore, operate, and maintain the cemetery and wishes to obtain TSU property as part of a major restoration project. *Id.* at 2. Two of TSU's parcels contain graves and are dedicated cemetery lands, and the third parcel abuts the cemetery. *Id.* TSU has obtained an appraisal assessing the value of the dedicated cemetery lands as having zero value, and the adjacent property as having a value of $11,250. *Id.*

The Corporation has proposed that it donate historical papers relating to the cemetery to TSU, or grant TSU access to the cemetery for various educational purposes in exchange for TSU's three parcels of real property. *Id.* at 2-3. In light of constitutional restraints on granting state property or funds to private entities, you wish to know if TSU may convey the property to the Corporation (1) in exchange for the historical papers, (2) in exchange for a right of access to the cemetery, or (3) as a gift "to serve the greater public purpose" of historic preservation. *Id.* at 1-3.

The TSU board of regents has general statutory authority to acquire and convey land on behalf of the University. Tex. Educ. Code Ann. § 106.35(a) (West 2002). Property belonging to a state university such as TSU is state property. *See Walsh v. Univ. of Tex.*, 169 S.W.2d 993, 993 (Tex. Civ. App.--El Paso 1942, writ ref'd) (observing that property of the University of Texas is state property because the university has no existence independent of the state).

Article III, sections 51 and 52 of the Texas Constitution are complementary provisions limiting the Legislature's appropriation of public funds and resources for private purposes, either directly or by authority vested in an agency or local entity. *See Byrd v. City of Dallas*, 6 S.W.2d 738, 740-41 (Tex. 1928) (observing that article III, sections 51 and 52 prohibit the state and its political subdivisions from gratuitously paying public funds for private purposes). Section 51 provides that the "Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever." Tex. Const. art. III, § 51. Similarly, section 52 prohibits the Legislature from authorizing any political corporation or subdivision of the state "to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever." *Id.* § 52(a). Both sections 51 and 52 have been construed by the courts as "prohibiting the gratuitous disposition of the state's money, property, or contractual rights." *Rhoads Drilling Co. v. Allred*, 70 S.W.2d 576, 582 (Tex. 1934); *accord* Tex. Att'y Gen. Op. Nos. JM-1091 (1989) at 2, MW-373 (1981) at 9 (observing that while article III, section 51 expressly mentions "public funds," it also pertains to the disposition of state property and contract rights). Therefore, TSU is constitutionally prohibited from making a purely gratuitous transfer of real

property to a private entity. *See Pasadena Police Officers Ass'n v. City of Pasadena*, 497 S.W.2d 388, 392-93 (Tex. Civ. App.--Houston [1st Dist.] 1973, writ ref'd n.r.e.) (holding that gratuitous transfer of property rights violated article III, sections 51 and 52, among other constitutional prohibitions).

However, a transfer of property interests or rights in exchange for adequate consideration is not a gratuity. *See Walker v. City of Georgetown*, 86 S.W.3d 249, 260 (Tex. App.--Austin 2002, pet. denied) (determining that a lease of city property for valuable consideration was not gratuitous and did not violate the comparable prohibition of article III, section 52(a)). Although you have not had the historical papers appraised, your description of the facts suggests that the papers could constitute valuable consideration that could support an exchange for the real property in question. Also, we recognize that a grant of contract rights or other covenants can constitute consideration that will support a transaction, provided it grants a right that the grantee does not already possess. *See City of Austin v. Austin City Cemetery Ass'n*, 73 S.W. 525, 529 (Tex. 1903) (determining that permission to use property as cemetery was sufficient consideration to support agreement to limit the cost of lots); *Pasadena Police Officers Ass'n*, 497 S.W.2d at 392-93 (concluding that promise to build building was consideration for transfer of public property, but modification of agreement without additional consideration was contrary to the constitution); Tex. Att'y Gen. Op. No. DM-441 (1997) at 4 (opining that a grant of city property in exchange for a university's commitment to establish a campus on the property could satisfy the requirements of article III, section 52). However, whether a donation of the historical papers or the granting of access rights constitute adequate consideration for a conveyance of the real property involves questions of fact that cannot be determined in an attorney general opinion. *See* Tex. Att'y Gen. Op. No. GA-0298 (2005) at 3 (advising that the value of property is inherently a fact question that cannot be determined in an attorney general opinion). Instead, the adequacy of consideration is a determination for the governing board of the granting entity to make. Tex. Att'y Gen. Op. No. GA-0706 (2009) at 2 (concerning the findings a governing body must make to make a grant that complies with article III, section 52).

You also ask if TSU may convey the property to the Corporation as a gift "to serve the greater public purpose." Request Letter at 3. The grant or transfer of public funds or resources "for a public purpose, with a clear public benefit received in return, does not amount to a . . . violation of article III, sections 51 and 52." *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995). Attorney general opinions have long advised that to avoid a violation of article III, sections 51 and 52, a governing body that grants funds or property that benefits a person or private entity must (1) determine that the grant serves a public purpose and (2) place sufficient controls on the transaction to ensure that the public purpose is carried out. Tex. Att'y Gen. Op. Nos. GA-0743 (2009) at 2 (discussing attorney general opinions' interpretation of article III, section 51); GA-0321 (2005) at 2-3 (concerning a lease of public property consistent with article III, section 52); GA-0084 (2003) at 7-9 (concerning a lease and conveyance of real property consistent with article III, section 52). However, a grant to benefit the public generally would not suffice; rather, the public purpose to be served by the grant must be an authorized public purpose of the granting entity. *State ex rel. Grimes Cnty. Taxpayers Ass'n v. Tex. Mun. Power Agency*, 565 S.W.2d 258, 265-66 (Tex. Civ. App.--Houston [1st Dist.] 1978, writ dism'd). [2] Therefore, TSU may not grant real property to a private corporation except to serve an authorized purpose of the University. Whether granting the three parcels of real property owned by TSU to the Corporation would serve a public purpose of the University is for TSU's regents to determine in the first instance. *See* Tex. Att'y Gen. Op. No. MW-373 (1981) at 9-10 (stating that whether grant of university office space rent-free to private foundation would serve a public purpose is for the university to determine in the first instance). [3]

## SUMMARY

Article III, sections 51 and 52 of the Texas Constitution would not prohibit Texas Southern University from conveying real property to a private entity in exchange for historical papers or a right of access to property, provided such papers or access rights constitute adequate consideration for the real property. Whether the papers or rights constitute adequate consideration is a matter for the University's governing board to determine in the first instance.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

Daniel T. Hodge
First Assistant Attorney General

David J. Schenck
Deputy Attorney General for Legal Counsel

Jason Boatright
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee

## Footnotes

1. *See* Letter from Mr. Andrew C. Hughey, General Counsel, Texas Southern University, to Office of the Attorney General, Opinion Committee at 1 (May 31, 2011), https://www.oag.state.tx.us/opin/index_rq.shtml ("Request Letter").

2. *See, e.g.*, Tex. Att'y Gen. Op. Nos. GA-0747 (2009) at 3-4 & n.6 (stating that under article III, sections 51 and 52, a school district's payment to a municipality must serve the public purpose of the district); MW-373 (1981) at 9 (determining that "[a]rticle III, section 51 of the constitution requires that a grant [of office space] by the university to the foundation must serve a public purpose, *appropriate to the function of a university*" (emphasis added)); JM-1255 (1990) at 3, 9-10 (municipal bond resources cannot be used to assist a school district to acquire a school building without a direct municipal purpose other than the incidental economic benefit to the community).

3. You also ask whether, "in any case," TSU may grant by gift the two parcels of land containing the graves that were appraised as having zero value and note that the University would incur substantial costs to make such property marketable. Request Letter at 3. The special characteristics of the property are factors the Board might consider in determining the adequacy of the consideration or whether the transaction would serve a University purpose. *Cf.* Tex. Att'y Gen. Op. No. DM-268 (1993) at 2-3 (noting that an agreement to donate to a charity the county-owned personalty that is of no use or resale value to the county, thereby relieving the county of transportation and disposal costs, might serve a public purpose and constitute adequate consideration in accordance with article III, section 52).

Exhibit "8"

TSU's Summer Camp Brochure and Application

# Exhibit "9"

## TSU's Visiting Faculty Agreement

# Texas Southern University

## VISITING FACULTY AGREEMENT

This Agreement between Texas Southern University, 3100 Cleburne, Houston, TX 77004 ("*TSU*") and _____ University _____ ("*Host*"), takes effect on the last date signed below.

### *Background*

- Host has need for the services of _____, Professor in TSU's _____ ("*Scholar*").

- TSU is willing and able to provide Scholar's services.

### *Agreement*

The parties agree as follows:

I.   **Services**. TSU must provide Scholar's services to Host.  Scholar must teach courses, as set forth in Attachment "A", in Host's _____ School _____ as a visiting faculty member under the direction of _____.

II.  **Compensation**. In exchange for Scholar's services, Host must pay to TSU a sum of $_____. Host must pay that amount in _____ equal $_____ installments due on _____ respectively.

III. **Term and Termination**. "*Term*" means a period during which this Agreement remains in effect, beginning on _____ ____, 200___ and ending on _____ ___, 200___. A party has a right to terminate this Agreement at any time upon sixty days' written notice to the other party. That termination is without prejudice to any obligation or liability of either party already accrued before the termination.

IV.  **Employment Status**. During the Term, Scholar remains at all times a TSU employee. TSU must continue Scholar's salary and fringe benefits. TSU must make each appropriate employee payroll deduction for Scholar that federal or state law requires or that Scholar authorizes. For no purpose is Scholar considered a Host employee.

V.   **Liability**. To the extent authorized under applicable law, Host will indemnify and hold TSU, its Regents, officers, agents and employees harmless from any claim, cause of action, or judgment against them arising out of the negligent or intentional acts or omissions of Host, its officers, agents, or employees, and Scholar while subject to Host's direction and control under this Agreement. Host will not hold TSU harmless from any claim, cause of action, or judgment arising out of any negligent or intentional act or omission of TSU, its officers and agents or any person not subject to Host's supervision and control.

VI. **Miscellaneous**. This Agreement constitutes the parties' entire understanding with respect to its subject matter and no other agreement, either oral or written, is effective to vary this Agreement's provisions. An amendment to this Agreement is valid or binding only if each party reduces to writing and signs the amendment. Neither party has a right to assign its interest under this Agreement without the other party's written consent. This Agreement is governed by - and must be interpreted according to - the laws of the State of Texas.

Signed:

**TEXAS SOUTHERN UNIVERSITY**  _____

By: _____     By._____

Typed Name: _____     Typed Name: _____

Title:_____     Title:_____

Date: _____     Date:_____

Attachment A

[describe courses]