**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| LINDA TAYLOR, | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 4:12-CV-01975 |
| v. | § | |
| | § | |
| TEXAS SOUTHERN UNIVERSITY, | § | |
| Defendant. | § | |

# TEXAS SOUTHERN UNIVERSITY'S REPLY BRIEF IN FURTHER SUPPORT OF ITS PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Defense Litigation

JAMES "BEAU" ECCLES
Chief, General Litigation Division

DARREN G. GIBSON
Attorney-In-Charge
Texas Bar No. 24068846
Southern District No. 1041236
Assistant Attorney General
Office of the Attorney General
General Litigation Division - 019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX
Darren.Gibson@texasattorneygeneral.gov
**ATTORNEYS FOR DPS OFFICIALS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

I. SUMMARY ........ 1

II. ARGUMENT AND AUTHORITY ........ 2

A. TSU is an arm of the State and is therefore protected by sovereign immunity and the Eleventh Amendment. ........ 2

B. TSU does not waive its Eleventh Amendment immunity to Plaintiff's claims by receiving federal funds. ........ 5

C. The Eleventh Amendment protects TSU from all forms of relief sought by Plaintiff. ........ 6

D. Plaintiff is not asserting any claims for violations of the Fourteenth Amendment or the First Amendment in this lawsuit. ........ 6

E. Neither the FMLA nor the ADEA effectively abrogate the States' Eleventh Amendment immunity. ........ 8

F. Texas has not waived its Eleventh Amendment immunity to claims under the Texas Whistleblower Act and the TCHRA brought in federal court. ........ 9

G. Plaintiff is not asserting a Section 1983 claim, nor could she. ........ 10

H. Plaintiff has not established good cause for any amendment. ........ 10

III. CONCLUSION ........ 12

CERTIFICATE OF SERVICE ........ 13

# TABLE OF AUTHORITIES

## Cases

*Alaska v. EEOC*,
564 F.3d 1062 (9th Cir. 2009) .......... 9

*Alden v. Maine*,
527 U.S. 706 (1999).......... 8

*Atascadero State Hosp. v. Scanlon*,
473 U.S. 234 (1985).......... 5

*Bagg v. Univ. of Tex. Med. Branch at Galveston*,
726 S.W.2d 582 (Tex. App.–Houston [14th Dist.] 1987, writ ref'd n.r.e.) .......... 3

*Briggs v. Mississippi*,
331 F.3d 499 (5th Cir. 2003) .......... 6

*Burns-Toole v. Byrne*,
11 F.3d 1270 (5th Cir. 1994) .......... 7

*Coleman v. Court of Appeals of Maryland*,
132 S.Ct. 1327 (2012).......... 8, 9

*Duncan v. Univ. of Tex. Health Science Center at Houston*,
469 Fed.Appx. 364 (5th Cir. 2012).......... 3

*Evans v. City of Marlin, Tex.*,
986 F.2d 104 (5th Cir. 1993) .......... 7

*Fields v. Department of Public Safety*,
2012 WL 6005775 (M.D.La. Nov. 27, 2012) .......... 6

*Hearth, Inc. v. Department of Public Welfare*,
617 F.2d 381 (5th Cir. 1980) .......... 7

*Hencerling v. Texas A&M Univ.*,
986 S.W.2d 373(Tex. App.–Houston [1 Dist.] 1999, rev. denied) .......... 3

*Hernandez v. Tex. Dept. of Human Servs.*,
91 Fed.Appx. 934 (5th Cir. 2004).......... 10

*Kimel v. Florida Bd. of Regents*,
528 U.S. 62 (2000).......... 8, 9

*Lewis v. Midwestern State University*,
837 F.2d 197 (5th Cir. 1988) .......... 4

*Lowe v. Texas Tech Univ.*,
540 S.W.2d 297 (Tex. 1976).......... 3

*Marathon Financial Ins., Inc., RRG v. Ford Motor Co.*,
591 F.3d 458 (5th Cir. 2009) .......... 11

*Moreno v. Texas Southern Univ.*,
573 F.Supp. 73 (S.D. Tex. 1983) ........ 3

*Nelson v. University of Tex.*,
535 F.3d 318 (5th Cir. 2008) ........ 8

*Nevada Department of Human Resources v. Hibbs*,
538 U.S. 721 (2003) ........ 9

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984) ........ 2, 6

*Perez v. Region 20 Educ. Service Center*,
307 F.3d 318 (5th Cir. 2002) ........ 10

*Perry v. Texas A&I Univ.*,
737 S.W.2d 106 (Tex. App.–Corpus Christi 1987, writ ref'd n.r.e.) ........ 3

*Planned Parenthood of Houston & S.E. Tex. v. Sanchez*,
480 F.3d 734 (5th Cir. 2007) ........ 7

*Regents of the University of California v. Doe*,
519 U.S. 425 (1997) ........ 2, 4

*Rodrigues v. Texas*,
Civ. A. No. 9:11-CV-141, 2011 WL 7310320 (E.D. Tex. Nov. 18, 2011) ........ 8

*S&W Enterp. v. Southtrust Bank of Ala.*,
315 F.3d 533 (5th Cir. 2003) ........ 11

*Scooter v. Univ. Texas San Antonio*,
508 F.3d 812 (5th Cir. 2007) ........ 8

*Slade v. Tex. S. Univ. Bd. of Regents*,
232 S.W.3d 395 (Tex. App.–Houston [1st Dist.] 2007, no pet.) ........ 3

*Sosa v. Airprint Sys., Inc.*,
133 F.3d 1417 (11th Cir. 1998) ........ 11

*Stotter v. Univ. of Tex. San Antonio*,
508 F.3d 812 (5th Cir. 2007) ........ 7

*Sullivan v. University of Texas Health Science Center at Houston Dental Branch*,
217 Fed.Appx. 391 (5th Cir. 2007) ........ 6, 8

*Sw. Bell Tel. Co. v. City of El Paso*,
346 F.3d 541 (5th Cir. 2003) ........ 11

*United Carolina Bank v. Bd. Regents of Stephen F. Austin State Univ.*,
665 F.2d 553 (5th Cir. 1982) ........ 3, 4

*West v. Atkins*,
487 U.S. 42 (1988) ........ 7

*Will v. Mich. Dept. of State Police*,
491 U.S. 58 (1989) ........ 8

**Statutes**


20 U.S.C. § 1681, *et seq*. 5

29 U.S.C. § 794 5

29 U.S.C. §2601 *et seq*. 5

42 U.S.C. § 1983 ("Section 1983") 7

42 U.S.C. § 2000d *et seq* 5

42 U.S.C. § 2000d-7 5

42 U.S.C. § 6101 *et seq*. 5

42 U.S.C. §2000e *et seq.* 5

TEX. CONST. Art. 7 § 17 3

TEX. EDUC. CODE §§ 61.002, 61.003(3) 3

TEX. EDUC. CODE ANN. § 51.004 4

TEXAS GOVERNMENT CODE Chapter 554 5, 9

TEXAS LABOR CODE Chapter 21 5


**Rules**


FED. R. CIV. P. 16(b) 11

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| LINDA TAYLOR, | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 4:12-CV-01975 |
| v. | § | |
| | § | |
| TEXAS SOUTHERN UNIVERSITY, | § | |
| Defendant. | § | |

---

**TEXAS SOUTHERN UNIVERSITY'S REPLY BRIEF IN FURTHER SUPPORT OF ITS PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

TO THE HONORABLE KEITH P. ELLISON:

Now comes Defendant Texas Southern University ("TSU") and files this Reply Brief in Further Support of its Partial Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 14), and respectfully shows the Court as follows:

## I. SUMMARY

Plaintiff's response is notable for its paucity of relevant authority addressing the claims actually asserted in Plaintiff's complaint and the arguments put forth in TSU's motion to dismiss. First, Plaintiff ignores well-established law that TSU is an arm of the State for purposes of the Eleventh Amendment and mischaracterizes Supreme Court precedent on the issue. Second, Plaintiff relies on alleged waivers of immunity for claims that she is not asserting in this lawsuit, such as claims under Section 504 of the Rehabilitation Act. Whether there has been a valid waiver on such claims has no relevance to this case. Third, Plaintiff argues for a waiver because she seeks equitable relief, which ignores the fact that the Eleventh Amendment expressly applies "to any suit in law or equity." Fourth, Plaintiff argues for a waiver for claims related to

constitutional violations of her rights under the First and Fourteenth Amendments, but again fails to recognize that she is not asserting any such claims in this lawsuit (nor could she assert such claims against TSU). Finally, Plaintiff ignores Supreme Court and Fifth Circuit precedent holding Texas has not waived its Eleventh Amendment immunity to self-care FMLA claims and ADEA claims, nor to claims under the Texas Whistleblower Act or the TCHRA brought in federal court. In short, nothing in Plaintiff's response addresses the arguments put forth in TSU's motion to dismiss.

Recognizing the futility of her arguments, Plaintiff argues for leave to amend. However, Plaintiff has not offered a proposed amended complaint, nor has she met the requirements for such an untimely amendment under Rule 16. As a result, leave to amend should not be granted.

## II. ARGUMENT AND AUTHORITY

Each of Plaintiff's novel arguments is addressed in turn.

### A. TSU is an arm of the State and is therefore protected by sovereign immunity and the Eleventh Amendment.

Despite Plaintiff's protestations, there is no doubt that TSU is an arm of the State of Texas for purposes of sovereign immunity and the Eleventh Amendment. "It has long been settled that the reference to actions 'against one of the United States' [in the Eleventh Amendment] encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the University of California v. Doe*, 519 U.S. 425, 429 (1997); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Following these well-settled principles, the Fifth Circuit and its district courts "have overwhelmingly found various universities in the systems established under Texas law to

be arms of the state," including TSU. *Moreno v. Texas Southern Univ.*, 573 F.Supp. 73, 75 (S.D. Tex. 1983) (collecting cases); *see also Duncan v. Univ. of Tex. Health Science Center at Houston*, 469 Fed.Appx. 364, 366 (5th Cir. 2012) ("As a public university, UTHealth enjoys the state's sovereign immunity."); *United Carolina Bank v. Bd. Regents of Stephen F. Austin State Univ.*, 665 F.2d 553, 557 (5th Cir. 1982). Similarly, Texas law has long recognized that state universities, including TSU, "are agencies of the State and enjoy sovereign immunity." *Hencerling v. Texas A&M Univ.*, 986 S.W.2d 373, 374 (Tex. App.–Houston [1 Dist.] 1999, rev. denied) (citing *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex. 1976); *Bagg v. Univ. of Tex. Med. Branch at Galveston*, 726 S.W.2d 582, 584 (Tex. App.–Houston [14th Dist.] 1987, writ ref'd n.r.e.); *see also Slade v. Tex. S. Univ. Bd. of Regents*, 232 S.W.3d 395, 398 (Tex. App.–Houston [1st Dist.] 2007, no pet.) ("Branches of ... state universities are agencies of the State and thus are entitled to the same governmental immunity from suit or liability as the State of Texas."); *Perry v. Texas A&I Univ.*, 737 S.W.2d 106, 108 (Tex. App.–Corpus Christi 1987, writ ref'd n.r.e.).

Like other public universities in Texas, TSU is a creature of Texas state law. Chapter 106 of the TEXAS EDUCATION CODE authorizes the operation of the university and provides for its governance. In particular, under section 106.11 the university's Board of Regents is appointed by the governor and confirmed by the Texas senate. In addition, TSU is classified as a "general academic teaching institution" under Texas law and is subject to the oversight and leadership of the Texas Higher Education Coordinating Board, itself a state agency. TEX. EDUC. CODE §§ 61.002, 61.003(3). Furthermore, the Texas Constitution recognizes that state funds are to be provided to TSU, as well as other state universities, TEX. CONST. Art. 7 § 17. As with the Fifth Circuit's conclusion as to Stephen F. Austin University in its *United Carolina Bank* decision,

these characteristics indicate that TSU is an arm of the state and entitled to the protections of sovereign immunity. *See United Carolina Bank*, 665 F.2d at 557; *Lewis v. Midwestern State University*, 837 F.2d 197, 198-99 (5th Cir. 1988) (same conclusion as to other Texas public university).

Plaintiff makes much of the fact that TSU has local funds from tuition and fees that could be used to pay any judgment, rather of state funds. The Fifth Circuit rejected a similar argument in *United Carolina Bank*. That case held that "the eleventh amendment is not applicable only where payment would be directly out of the state treasury." 665 F.2d at 560. Instead, the "crucial question ... is whether use of these unappropriated funds to pay a damage award ... would interfere with the fiscal autonomy and political sovereignty of Texas." *Id.* at 560-61. In answering that question, the reasoning in *United Carolina Bank* is exactly on point here: "These local funds, collected under authority of state law, TEX. EDUC. CODE ANN. § 51.004, are either held in the Treasury or restricted as to use. In either event they are subject to audit and budget planning. Thus any award from those funds would directly interfere with the state's fiscal autonomy." *Id.* at 561.[1]

In arguing that TSU is somehow not an arm of the State for purposes of the Eleventh Amendment, Plaintiff has not cited to a single case holding that TSU or any other Texas public university established by state law is not protected by the Eleventh Amendment. Rather, Plaintiff attempts to rely on a five-factor analysis purportedly adopted by the Supreme Court in *Regents of the University of California v. Doe,* 519 U.S. 425 (1997). (Doc. 19 at 7.) To be clear, the

---

[1] Plaintiff admits as much, when she recognizes that the local funds shall be "accounted for annually as provided in the general appropriations act." (Doc. 19 at 8 (quoting TEX. EDUC. CODE 54.004).) As to Senate Bill 1861 cited by Plaintiff (Doc. 19 at 7, Doc. 21 at 2-3), counsel for TSU could not find any such law currently in force in the Texas statutory code or any reference to such a law in the online archives of the Texas Legislature. Moreover, the document cited by Plaintiff merely shows that S.B. 1861 authorized certain General Revenue funds (*i.e.* state funds) in the TSU general revenue account to be appropriated for payment of claims and judgments. Thus, it is clear that judgments against TSU may be paid with state funds.

Supreme Court *did not* adopt this five factor analysis, but only cited it as being used by the Ninth Circuit in its ruling, which the Supreme Court promptly reversed. *Regents*, 519 U.S. at 428 n.3. The five factor analysis cited by Plaintiff has never been adopted by the Supreme Court or the Fifth Circuit.

In short, nothing in Plaintiff's response changes the fact that TSU is an arm of the State of Texas and is protected by sovereign immunity and the Eleventh Amendment.

**B. TSU does not waive its Eleventh Amendment immunity to Plaintiff's claims by receiving federal funds.**

Plaintiff next argues that, even if TSU is protected by the Eleventh Amendment, it has waived such immunity by its receipt of federal funds. Plaintiff relies on the language in 42 U.S.C. § 2000d-7 stating that recipients of federal funds waive immunity to claims under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*; the Age Discrimination Act of 1974, 42 U.S.C. § 6101 *et seq.*; and Title VI of the Civil Rights Act of 1974, 42 U.S.C. § 2000d *et seq*.

To be clear, Plaintiff's First Amended Complaint does not assert any causes of action under these statutes. (Doc. 10.) Rather, the only statutes cited by Plaintiff are (i) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*; (ii) the Texas Commission on Human Rights Act ("TCHRA"), TEXAS LABOR CODE Chapter 21; (iii) the Texas Whistleblower Act, TEXAS GOVERNMENT CODE Chapter 554; and (iv) the Family Medical Leave Act ("FMLA"), 29 U.S.C. §2601 *et seq*. (Doc. 10 ¶¶ 3-6, 43-53.) And as the Supreme Court has recognized, "mere receipt of federal funds does not establish that a State has consented to suit in federal court." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 246-47 (1985). Rather, such a waiver must be expressed in the language of the specific statute as a condition to participation in the federally-funded program. *Id.* at 247. The waiver for claims under the Rehabilitation Act and

other statutes found in section 2000d-7 in no way constitutes a waiver for the claims asserted by Plaintiff in this case. *See Sullivan v. University of Texas Health Science Center at Houston Dental Branch*, 217 Fed. Appx. 391, 394-95 (5th Cir. 2007) (holding that § 2000d-7 does not waive immunity as to all discrimination claims under federal law, including claims under the ADEA, but only as to those specifically referenced);[2] *Fields v. Department of Public Safety*, 2012 WL 6005775, at *5 (M.D. La. Nov. 27, 2012) ("Unlike the Rehabilitation Act, the statutes involved in the instant case show no such intent [to abrogate Eleventh Amendment immunity].").

Because Plaintiff does not assert any claims for which immunity is waived by operation of receipt of federal funds, her argument is of no avail.

**C. The Eleventh Amendment protects TSU from all forms of relief sought by Plaintiff.**

Plaintiff appears to suggest that, because she is seeking equitable relief, the Eleventh Amendment does not apply. (Doc. 19 at 13.) The protections of the Eleventh Amendment expressly apply to "to any suit in law or equity." U.S. CONST. amend. XI. Thus, the jurisdictional bar of the Eleventh Amendment "applies regardless of the nature of the relief sought." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Briggs v. Mississippi*, 331 F.3d 499, 502-03 (5th Cir. 2003) (recognizing application to claims for injunctive relief). As a result, the fact that Plaintiff is seeking injunctive relief in addition to monetary damages has no impact on the applicability of the Eleventh Amendment to her claims against TSU.

**D. Plaintiff is not asserting any claims for violations of the Fourteenth Amendment or the First Amendment in this lawsuit.**

Plaintiff attempts to establish a waiver of immunity to her claims by arguing that TSU is not immune to claims for violations of the due process and equal protection clauses of the

[2] To the extent that Plaintiff is asserting a claim for age discrimination under the ADEA, *Sullivan* makes it clear that receipt of federal financial assistance does not constitute a waiver for ADEA claims.

Fourteenth Amendment and for violations of her free speech rights under the First Amendment. (Doc. 19 at 13-15.) However, Plaintiff does not assert any such claims in this lawsuit. Even if Plaintiff had asserted such claims, there would be no waiver because Plaintiffs cannot bring claims for alleged constitutional violations directly against TSU.

It is well established that there is no direct cause of action provided for alleged violations of the Constitution. Rather, the exclusive vehicle for such claims is an action under 42 U.S.C. § 1983 ("Section 1983") against a "person" acting under the color of state law. *See Planned Parenthood of Houston & S.E. Tex. v. Sanchez*, 480 F.3d 734, 739 (5th Cir. 2007) ("Section 1983 is the proper vehicle for a claim alleging that a state official has violated the Plaintiffs' rights under the Fourteenth Amendment."); *Stotter v. Univ. of Tex. San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007); *Burns-Toole v. Byrne*, 11 F.3d 1270, 1273 n.3 (5th Cir. 1994) ("The district judge properly dismissed [plaintiff's] First and Fourteenth Amendment claims as well, citing the rule that the proper vehicle for these allegations is § 1983."). This is because "the federal courts, and [the Fifth] Circuit in particular, have been hesitant to find causes of action arising directly from the Constitution" due to their "awareness that the framers of the Constitution saw fit to entrust the job of legislating to the Congress." *Hearth, Inc. v. Department of Public Welfare*, 617 F.2d 381, 382 (5th Cir. 1980).

Furthermore, Plaintiff cannot bring claims under Sections 1983 against a state university such as TSU. In order to prevail on a Section 1983 claim, a plaintiff must prove that (1) *a person* (2) acting under color of state law (3) subjected the plaintiffs or caused the plaintiffs to be subjected (4) to the deprivation of a right secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Evans v. City of Marlin, Tex.*, 986 F.2d 104, 107 (5th Cir. 1993); 42 U.S.C. §1983. It is well settled that a state university, such as TSU, is

not a "person" for the purposes of Sections 1983, and therefore not a proper defendant for such claims. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989); *Scooter v. Univ. Texas San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007) ("This court has also recognized that state universities as arms of the state are not 'persons' under § 1983.").

Again, Plaintiff has not alleged constitutional violations in this lawsuit either directly or under Section 1983. Even if she did, she could not assert such claims against TSU.

**E. Neither the FMLA nor the ADEA effectively abrogate the States' Eleventh Amendment immunity.**

Plaintiff argues that the plain language of the FMLA, ADEA and FLSA effectively abrogates the states' Eleventh Amendment immunity as to her claims. The Supreme Court and the Fifth Circuit disagree.

The Supreme Court and Fifth Circuit have made it clear that that Congress did not validly abrogate the State's sovereign immunity when it passed the FMLA's self-care provision. *Coleman v. Court of Appeals of Maryland*, 132 S.Ct. 1327, 1338 (2012); *see also Nelson v. University of Tex.*, 535 F.3d 318 (5th Cir. 2008). Similarly, the Supreme Court has made clear that "[t]he ADEA's purported abrogation of the States' sovereign immunity is [] invalid." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91 (2000); *see also Sullivan v. Univ. of Tex. Health Science Center at Houston Dental Branch*, 217 Fed.Appx. 391, 395 (5th Cir. 2007) (affirming dismissal of ADEA claim on sovereign immunity grounds). Although Plaintiff is not asserting an FLSA claim in this lawsuit, the Supreme Court has also made it clear that states are immune to claims by employees under the FLSA. *Alden v. Maine*, 527 U.S. 706, 712, 754-57 (1999) (holding states' sovereign immunity precludes FLSA suits); *see also Rodrigues v. Texas*, Civ. A. No. 9:11-CV-141, 2011 WL 7310320, at *3 (E.D. Tex. Nov. 18, 2011).

The cases cited by Plaintiff do not save her otherwise barred claims. The primary case cited by Plaintiff, *Alaska v. EEOC*, 564 F.3d 1062 (9th Cir. 2009), addresses the waiver of the states' sovereign immunity to claims for race and gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended by the Government Employee Rights Act. *Id.* (finding both express and unequivocal intent to abrogate and abrogation effective under Fourteenth Amendment). However, TSU is not asserting immunity to Plaintiff's Title VII claims in its motion to dismiss.[3] Plaintiff also cites *Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721 (2003), which addresses waiver of Eleventh Amendment immunity related to the family-care provision of the Family and Medical Leave Act (FMLA). As recognized in TSU's opening brief,[4] the Supreme Court has reached a different conclusions regarding the self-care versus family-care provisions and has held that Congress did not validly abrogate the State's sovereign immunity when it passed the FMLA's self-care provision. *Coleman v. Court of Appeals of Maryland*, 132 S.Ct. 1327, 1338 (2012). Because Plaintiff is asserting a self-care FMLA claim, *Coleman* is controlling. Similarly, Plaintiff also cites to *Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000), which expressly held that "[t]he ADEA's purported abrogation of the States' sovereign immunity is [] invalid." *Id.* at 91. None of these cases save Plaintiff's FMLA claim or her age discrimination claim.

**F. Texas has not waived its Eleventh Amendment immunity to claims under the Texas Whistleblower Act and the TCHRA brought in federal court.**

Plaintiff cites to the waiver of immunity provision in the TEXAS GOVERNMENT CODE, section 554.0035, as evidence that Texas has waived its Eleventh Amendment immunity to

---

[3] Doc. 14 at 2 n.1 ("TSU does not seek dismissal of Plaintiff's Title VII claims related to race and gender discrimination and retaliation at this time."); *id.* at 6 ("the only claims remaining would be Plaintiff's claims for race and gender discrimination and retaliation under Title VII.").

[4] Doc. 14 at 4-5.

whistleblower claims asserted in federal court. (Doc. 19 at 18.) The Fifth Circuit has made it clear that "Texas' waiver of sovereign immunity in its own courts, however, is not a waiver of its Eleventh Amendment immunity in federal courts." *Hernandez v. Tex. Dept. of Human Servs.*, 91 Fed.Appx. 934, 935 (5th Cir. 2004). The Fifth Circuit has expressly applied this reasoning to claims under both the Texas Whistleblower Act and the THCRA. *See id.* (reversing denial of motion to dismiss and holding TCHRA claims barred by Eleventh Amendment); *Perez v. Region 20 Educ. Service Center*, 307 F.3d 318, 332-33 (5th Cir. 2002) (holding TCHRA "does not expressly waive sovereign immunity in federal court"; "the Texas Whistleblower Act's waiver of sovereign immunity in Texas state court does not amount to a waiver of its sovereign immunity in federal court.").

Plaintiff cites no contrary authority for the proposition that Texas has waived its Eleventh Amendment immunity to Plaintiff's claims under the Texas Whistleblower Act or the TCHRA.

**G. Plaintiff is not asserting a Section 1983 claim, nor could she.**

Plaintiff argues that TSU is not immune from claims related to alleged violation of her constitutional rights brought under section 1983. As discussed *supra*, Plaintiff does not assert any such claims in her Amended Complaint, nor could she assert claims against TSU under Section 1983.

**H. Plaintiff has not established good cause for any amendment.**

In her response, Plaintiff moves in the alternative for leave to amend, should the Court grant TSU's motion. Pursuant to the Court's Scheduling Order, the deadline for Plaintiff to amend her pleadings was January 31, 2013. (Doc. 8.) That deadline passed months ago, and the parties have since engaged in months of discovery, with April 30, 2013 as the discovery deadline. (*Id.*) Plaintiff has not offered any reason for an untimely amendment at this late stage

of the case, nor has she filed a proposed amended complaint. Rather, she relies on the language of Rule 15(a), which states that leave should be freely given.

However, Federal Rule of Civil Procedure 16(b), not Rule 15, "governs amendment of pleadings after a scheduling order's deadline to amend has expired." *Marathon Financial Ins., Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009).[5] Rule 16(b) provides that once a scheduling order has been entered, it "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b). Thus, to amend after the deadline, a party "must show good cause for not meeting the deadline before the more liberal standard of Rule 15(a) will apply." *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003).[6] Four factors are relevant to good cause: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Sw. Bell*, 346 F.3d at 546.

Plaintiff has not established good cause, as she has offered no explanation for her failure to amend within the time set by the Court. Although Plaintiff suggests she might add new claims under Section 1983, Plaintiff could have asserted these claims at the outset and offers no reasonable explanation for failing to do so prior the amendment deadline. *See S&W Enterp. v. Southtrust Bank of Ala.*, 315 F.3d 533, 535 (5th Cir. 2003) ("S&W could have asserted interference with contract from the beginning, but fails to explain why it did not."); *Marathon*, 591 F.3d 458 ("Marathon knew or should have known of the effect of the trial court's order, and had ample opportunity to revisit the issue well before the eve of trial."). Furthermore, any such

---

[5] As one court has noted, "[i]f we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (per curiam).

[6] "The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enterp. v. Southtrust Bank of Ala.*, 315 F.3d 533, 535 (5th Cir. 2003) (quotation omitted).

amendment adding Section 1983 claims against TSU would be futile, for the reasons stated above.

For these reasons, Plaintiff's motion for leave to amend should be denied.

## III. CONCLUSION

TSU respectfully requests that this Court grant its Motion to Dismiss and dismiss the Plaintiff's claims under the TCHRA, the Whistleblower Act, and the FMLA, and her age discrimination claim under federal law, such that the only claims remaining would be Plaintiff's claims for race and gender discrimination and retaliation under Title VII. TSU also requests that the Court deny Plaintiff's motion for leave to amend.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Defense Litigation

JAMES "BEAU" ECCLES
Chief, General Litigation Division

/s/ Darren G. Gibson
**DARREN G. GIBSON**
**Attorney-in-charge**
Texas Bar No. 24068846
Southern District ID No. 1041236
Darren.Gibson@texasattorneygeneral.gov
Assistant Attorney General
Office of the Attorney General
General Litigation Division -019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX

*ATTORNEYS FOR DEFENDANT*
*TEXAS SOUTHERN UNIVERSITY*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

Peggy J. Lantz
10497 Town & Country Way, Ste. 700
Houston, Texas 77024
peggylantz@lantzlaw.com

/s/ Darren G. Gibson
**DARREN G. GIBSON**
Assistant Attorney General