IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LINDA TAYLOR, § | |
| Plaintiff, § | |
| § | Civil Action No. 4:12-CV-01975 |
| v. § | |
| § | |
| § | |
| TEXAS SOUTHERN UNIVERSITY, § | |
| Defendant. § | |

## MEMORANDUM & ORDER

Before the Court is Defendant's Partial Motion to Dismiss (Doc. No. 14). After reviewing the motion, response, and applicable law, the Court **GRANTS** the Motion to Dismiss.

## I. BACKGROUND

This case arises out of Plaintiff Linda Taylor ("Plaintiff's") employment as a College Business Administrator ("CBA") with Defendant Texas Southern University ('Defendant" or "TSU"). Plaintiff is a 53 year old light-skinned black woman. She was hired by TSU in 1999 as an Administrative Assistant and was named the College of Education's CBA in July 2010. (Doc. No. 10, ¶ 11-14.) Plaintiff alleges that, during 2010, she reported problems and discrepancies relating to time reporting and scholarship payments. (*Id.* ¶ 16-17.) Plaintiff had found that some employees were wrongfully paid from various sources, for example, by collecting scholarship payments they were ineligible to receive. (Doc. No. 19.) Plaintiff alleges that she reported these problems to two separate deans and to the TSU Board of Regents. (*Id.* ¶ 19.) Plaintiff asserts that,

1

after she made these reports, her work environment became hostile and she suffered adverse employment actions. (*Id.* ¶ 20-24.) The hostility included harassing and abusive emails, verbal abuse, and false accusations of having stolen a computer. (*Id.* ¶ 20.) Additionally, Plaintiff alleges that TSU inquired into her credit records without her permission or knowledge and publicized an opinion of what had been found. (*Id.*) On April 11, 2011, Plaintiff was temporarily demoted from CBA to an Administrative Assistant for the Health and Kinesiology Department. (*Id.* ¶ 25.) The position of CBA was allegedly filled with a "young dark-skinned black man" who had less experience but was paid more than Plaintiff (*Id.* ¶ 30.)

Plaintiff alleges that the hostile work environment contributed to serious health issues for her, requiring hospitalization. (*Id.* ¶ 20.) Plaintiff then went out on leave, under the Family and Medical Leave Act ("FMLA"), from May through August 2011. Upon her return, she was notified that her demotion to Administrative Assistant would be permanent. (*Id.* ¶ 25.) Plaintiff claims that her assignment to the Health and Kinesiology Department was retaliatory, as it required her to work in the gymnasium, "a building known by everyone to have environmental issues," including mold and toxic gases. (*Id.* ¶ 26.) Plaintiff filed four grievances with TSU between April 2011 and November 2011. The first two grievances have been administratively closed. On or about August 22, 2011, Plaintiff filed a claim with the EEOC. On March 30, 2012, Plaintiff was sent a Right to Sue letter. (*Id.* ¶ 40.) Plaintiff's employment with TSU was terminated in June 2012. (*Id.* ¶ 41.)

Plaintiff alleges that TSU's employment decisions constituted improper age, race, and gender discrimination and retaliation in violation of numerous laws. Those include (i) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; (ii) the Texas

Commission on Human Rights Act ("TCHRA"), Texas Labor Code Chapter 21; (iii) the Texas Whistleblower Act, Texas Government Code Chapter 554; and (iv) FMLA, 29 U.S.C. §2601 *et seq.* (*Id.* ¶¶ 3-6, 43-53.)

By this motion, TSU seeks to dismiss Plaintiff's claims under the TCHRA, the Texas Whistleblower Act, and the FMLA for lack of jurisdiction under the Eleventh Amendment. In addition, TSU seeks dismissal of Plaintiff's age discrimination claim, to the extent it is asserted under federal law.

## II. LEGAL STANDARD

TSU moves for dismissal pursuant to Rule 12(b)(1). Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 101 (5th Cir. 1998). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir.1996). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D.Tex.1995); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980).

## III. ANALYSIS

### A. Whether TSU is a State Entity

3

TSU argues that Plaintiff's claims under the TCHRA, the FMLA, and the Whistleblower Act, and any federal age discrimination claim, are barred by the Eleventh Amendment. "It has long been settled that the reference to actions 'against one of the United States' [in the Eleventh Amendment] encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the University of California v. Doe*, 519 U.S. 425, 429 (1997); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").

Additionally, TSU alleges that it is not sufficiently independent from the State of Texas to be considered autonomous. *United Carolina Bank.*, 665 F.2d at 557 (examining the state's degree of control over university, and university's fiscal autonomy). Chapter 106 of the Texas Education Code authorizes the operation of the university and provides for its governance. In particular, under section 106.11, the University's Board of Regents is appointed by the governor and confirmed by the Texas Senate. Tex. Educ. Code Ann. § 106.11 (West). TSU is classified as a "general academic teaching institution" under Texas law, and is subject to the oversight and leadership of the Texas Higher Education Coordinating Board, itself a state agency. Tex. Educ. Code §§ 61.002, 61.003(3). The Texas Constitution also recognizes that state funds are provided to TSU, as well as other state universities. Tex. Const. Art. 7 § 17.

Plaintiff makes three arguments against applying Eleventh Amendment immunity to TSU. Specifically, Plaintiff contends 1) that the Texas treasury is protected from liability through state law, 2) that TSU waives Eleventh Amendment immunity by

benefitting from federal funds, and 3) that TSU is not immune from suits arising under the First or Fourteenth Amendment.

Plaintiff initially argues that there are five factors to determine whether the University is an arm of the state. *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 706, 728-29 (1999). The five factors considered by the Ninth Circuit in evaluating whether the University was an arm of the State were: "[1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has power to take property in its own name or only the name of the state, and [5] the corporate status of the entity." *Id.* at 428. However, Plaintiff's reliance on the five factors is misplaced since these factors have not been adopted by the Supreme Court. The factors were used only by the Ninth Circuit in its ruling, a decision which was reversed by the Supreme Court in *Regents.* 519 U.S. at 428.

Rather, Texas law has long recognized that state universities, including TSU, "are agencies of the State and enjoy sovereign immunity." *Hencerling v. Texas A&M Univ.,* 986 S.W. 2d 373, 374 (Tex. App.—Houston [1 Dist.] 1999, rev. denied) *citing Lowe v. Texas Tech Univ.,* 540 S.W.2d 297, 298 (Tex.1976); *Bagg v. University of Texas Medical Branch at Galveston,* 726 S.W.2d 582, 584 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.); *see also Moreno v. Texas S. Univ.,* 573 F. Supp. 73 (S.D. Tex. 1983) (holding that the state university, its law school, and law school's deans were arms of the state and immune from suit for damages under § 1983 and the Fourteenth Amendment); *Duncan v. Univ. of Tex. Health Science Center at Houston,* 469 Fed. Appx. 364, 366 (5th Cir. 2012) ("[a]s a public university, UT Health enjoys the state's sovereign immunity");

*United Carolina Bank v. Bd. of Regents of Stephen F. Austin State Univ.*, 665 F.2d 553 (5th Cir. 1982) (Eleventh Amendment barred civil rights suit brought by university professor against Board of Regents of Stephen F. Austin State University).

However, Plaintiff argues that because the state has capped the amount of funds that can be withdrawn from the Texas treasury to satisfy a judgment, the Texas treasury is protected from liability. Claims which are more than $25,000 in amount (or older than four years) will not be satisfied by the State of Texas. (Doc. No. 19-2, Senate Bill 1861 (enacted September 1, 2003.)) Plaintiff also argues that most of TSU's revenue comes from tuition and other sources, signifying that TSU is sufficiently independent from the state not to be implicated by the Eleventh Amendment.

In *United Carolina Bank,* the Fifth Circuit held that the "crucial question is whether use of...funds to pay a damage award...would interfere with the fiscal autonomy and political sovereignty of Texas." *United Carolina,* 665 F.2d at 560-61. The court found that focusing solely on whether the funds for a judgment were directly out of the state treasury was insufficient. Instead, the court found that "local funds, collected under the authority of state law, Tex. Educ. Code Ann. § 51.004, are either held in the Treasury or restricted as to use. In either event they are subject to audit and budget planning. Thus, any award from those funds would directly interfere with the state's fiscal autonomy." *Id.* at 561. Although TSU, like many other state universities, collects tuition and other funds that would support any money judgment, Plaintiff acknowledges that judgments below $25,000 would be satisfied from funds originating from the state's treasury. As per the ruling in *United Carolina,* such an award would interfere with the state's fiscal autonomy.

Additionally, Plaintiff claims that TSU waived its Eleventh Amendment immunity to Plaintiff's claims by receiving federal funds. However, as the Supreme Court has recognized, "mere receipt of federal funds does not establish that a State has consented to suit in federal court." *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 246-47 (1985). Rather, such a waiver must be expressed in the language of the specific statute as a condition to participation in the federally-funded program. *Id.* at 247. Plaintiff relies on the language in 42 U.S.C. § 2000d-7 to the effect that recipients of federal funds waive immunity. However, this statute applies only to claims under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*; the Age Discrimination Act of 1974, 42 U.S.C. § 6101 *et seq.*; and Title VI of the Civil Rights Act of 1974, 42 U.S.C. § 2000d *et seq.* Because Plaintiff's Complaint does not rely on these statutes, Defendant has not waived Eleventh Amendment immunity by accepting federal funds.

Finally, Plaintiff argues that there has been a waiver of immunity to her claims because TSU is not immune to claims for violations of the due process and equal protection clauses under the Fourteenth Amendment, and for violations of her free speech rights under the First Amendment. However, Plaintiff has not asserted claim under the First and Fourteenth amendment. In addition, in order to assert a constitutional claim, the exclusive vehicle is 42 U.S.C. § 1983. *Burns-Toole v. Byrne,* 11 F.3d 1270, 1273 n.3 (5th Cir. 1994) ("The district judge properly dismissed [plaintiff's] First and Fourteenth Amendment claims as well, citing the rule that the proper vehicle for these allegations is § 1983.") However, a state university like TSU is not a "person" for the purposes of § 1983, and therefore not a proper defendant for such claims. *See Will v. Mich. Dept. of State Police,* 491 U.S. 58, 71 (1989); *Scooter v. Univ. Texas San Antonio,* 508 F.3d 812, 821 (5th Cir. 2007) ("This

court has also recognized that state universities as arms of the state are not 'persons' under § 1983.") Regardless, Plaintiff has not alleged constitutional violations in the lawsuit directly, or under § 1983. The Court concludes that, for Eleventh Amendment purposes, a suit against a state agency or university is a suit against the state. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100-102 (1984). The Court will now address Defendant's arguments that apply to Plaintiff's specific claims.

## B. TCHRA and Whistleblower Act

Defendant argues that Plaintiff's claims under the TCHRA and Whistleblower Act are barred by the Eleventh Amendment. Plaintiff argues that the Texas Government Code § 554.0035, "waiver of immunity," is evidence that Texas has waived its Eleventh Amendment immunity to whistleblower claims. However, the Fifth Circuit has made it clear that "Texas' waiver of sovereign immunity in its own courts, however, is not waiver of its Eleventh Amendment immunity in federal courts." *Hernandez v. Texas Dep't of Human Servs.*, 91 F. App'x 934, 935 (5th Cir. 2004). The Fifth Circuit has adopted similar reasoning to claims under the THCRA as well. *See id.* (reversing denial of motion to dismiss and holding TCHRA claims barred by Eleventh Amendment); *Perez v. Region 20 Educ. Service Center*, 307 F.3d 318, 332-33 (5th Cir. 2002) (holding that the TCHRA "does not expressly waive sovereign immunity in federal court"; "the Texas Whistleblower Act's waiver of sovereign immunity in Texas state court does not amount to a waiver of its sovereign immunity in federal court."). The Court finds that Plaintiff's claims under the TCHRA and the Texas Whistleblower Act should be dismissed for lack of subject matter jurisdiction.

## C. FMLA

Defendant argues that Plaintiff's FMLA claim is also subject to sovereign immunity. The Family and Medical Leave Act of 1993 (FMLA or Act) entitles eligible employees to take up to 12 work weeks of unpaid leave per year. An employee may take leave under the FMLA for: (A) "the birth of a son or daughter ... in order to care for such son or daughter," (B) the adoption or foster-care placement of a child with the employee, (C) the care of a "spouse ... son, daughter, or parent" with "a serious health condition," and (D) the employee's own serious health condition when the condition interferes with the employee's ability to perform at work. 29 U.S.C. § 2612(a)(1). Subparagraphs (A), (B), and (C) grant leave for reasons related to family care, and those three provisions are referred to as the family-care provision. *Coleman v. Court of Appeals of Maryland*, 132 S. Ct. 1327, 1332, 182 L. Ed. 2d 296 (2012). Subparagraph (D) is considered the self-care provision. *Id.*

The Supreme Court has held that Congress validly abrogated the State's sovereign immunity as to family-care claims under the FMLA. *Nevada Dept. of Human Resources v. Hibbs,* 538 U.S. 721 (2003). However, Plaintiff's Complaint establishes that she took FMLA for self-care purpose. Plaintiff alleges that her FMLA leave was related to her own "serious health conditions," which required hospitalization and surgery. (Doc. No. 10, ¶¶ 21-23.) The Supreme Court has made clear that Congress did not validly abrogate the State's sovereign immunity when it passed the FMLA's self-care provision. *Coleman v. Court of Appeals of Maryland*, 132 S.Ct. 1327, 1338 (2012). Thus, the Court grants Defendant's Motion to Dismiss, finding that it does not have jurisdiction over Plaintiff's FMLA self-care claim.

**D. Age Discrimination**

In addition to alleging discrimination on the basis of race and gender under Title VII, Plaintiff asserts a claim for age discrimination. (Doc. No. 10, ¶ 8.) Plaintiff does not state whether she is bringing such a claim under state or federal law. To the extent that Plaintiff is asserting a claim under the Age Discrimination in Employment Act of 1967 (ADEA), Defendant argues that a federal age discrimination claim is barred by the Eleventh Amendment.

The Supreme Court in *Kimel* made it clear that "[t]he ADEA's purported abrogation of the States' sovereign immunity is invalid." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91(2000).The Court held that the ADEA does not abrogate Eleventh Amendment immunity because the ADEA could not be enacted pursuant to section five of the Fourteenth Amendment. *Id.* at 90; *see also Sullivan v. Univ. of Texas Health Sci. Ctr. at Houston Dental Branch*, 217 F. App'x 391 (5th Cir. 2007) (holding that medical center had Eleventh Amendment immunity from an age discrimination action). Thus, an age discrimination claim under federal law must be dismissed for lack of subject matter jurisdiction.

The Court notes that an age discrimination claim brought under state law would fall under TCHRA, which has the stated purpose of providing "for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." Tex. Labor Code Ann. § 21.001 (West). TCHRA provides that an "unlawful employment practice is established when the complainant demonstrates that ... age ... was a motivating factor for an employment practice, even if other factors also motivated the practice." Tex. Lab.Code Ann. § 21.125(a). A state age discrimination claim would likely be foreclosed because Texas has not waived sovereign immunity regarding claims under TCHRA in

10

federal courts. *Hernandez*, 91 Fed. Appx. at 935. However, Defendant does not ask for the Court to dismiss a state age discrimination claim at this time.

Plaintiff requests leave to amend if the Court were to grant Defendant's Motion to Dismiss. Federal Rule of Civil Procedure 15 provides that this Court "should freely give leave when justice so requires." *Cole v. Sandel Med. Indus., LLC.,* 413 Fed.Appx. 683, 688 (5th Cir.2011) (quoting Fed.R.Civ.P. 15(a)(2)). However, Federal Rule of Civil Procedure 16(b), not Rule 15, "governs amendment of pleadings after a scheduling order's deadline to amend has expired." *Marathon Financial Ins., Inc., RRG v. Ford Motor Co.,* 591 F.3d 458, 470 (5th Cir. 2009). The deadline for amended pleadings was January 31, 2013. (Doc. No. 8.) Rule 16(b) provides that, once a scheduling order has been entered, it "may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b). Four factors are relevant to good cause: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Sw. Bell Tel. Co. v. City of El Paso,* 346 F.3d 541, 546 (5th Cir.2003) (citing *S&W Enters.,* 315 F.3d at 536).

In considering whether to grant leave to amend, the Court may weigh multiple factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice, and futility. *Wimm v. Jack Eckerd Corp.,* 3 F.3d 137, 139 (5th Cir.1993)l; *see also United States ex rel. Steury v. Cardinal Health, Inc.,* 625 F.3d 262, 270 (5th Cir. 2010) (holding that denial of leave to amend may be appropriate when amendment would be futile); *Stripling v. Jordan Prod. Co., LLC,* 234 F.3d 863, 873 (5th Cir. 2000) (A proposed amendment is futile if "the amended complaint would fail to state

a claim upon which relief can be granted."). Because the Court must grant Defendant's motion to dismiss for jurisdictional reasons, the Court finds leave to amend would be futile. Even if such claims were brought under § 1983, TSU is not considered a "person" under the statute, and the claims would have to be dismissed, for the reasons stated above. Therefore, the Court denies Plaintiff's request for leave to amend.

Because the Court's dismissal based on a lack of subject matter jurisdiction is not a determination of the merits, Defendants' Motion to Dismiss is **GRANTED** without prejudice. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977) (per curiam).

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 20 day of June, 2013.

**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**